759 F.2d 548
 22 ERC 1707, 15 Envtl. L. Rep. 20,434
 Honorable James A. DRESSMAN, Judge; Honorable Lambert Hehl,
Judge; and Honorable Bruce Ferguson, Judge, Petitioners,
v.
Douglas COSTLE, Administrator, United States Environmental
Protection Agency, and United States Environmental
Protection Agency, Respondents.
 No. 80-3721.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 14, 1985.
Decided April 17, 1985.
 
 Lanny R. Holbrook, argued, Holbrook & Associates, Cincinnati, Ohio, John Elfers, Covington, Ky., Larry J. Crigler, Hebron, Ky., Paul H. Twehues, Jr., Twehues, Verst & Wehr, Newport, Ky., for petitioners.
 Douglas Costle, Admin., E.P.A., Atlanta, Ga., E.P.A. Gen. Counsel's Office, Washington, D.C., Eric Smith, Nancy S. Bryson, Asst. Atty. Gen., U.S. Dept. of Justice, Land & Natural Resources Div., Pollution Control Section, Julie A. Weisman, argued, Dept. of Justice, Washington, D.C., for respondents.
 Before LIVELY, Chief Judge, KEITH, Circuit Judge, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 This petition arises under the Clean Air Act, as amended ("Act" or "CAA"), 42 U.S.C. Sec. 7401 et seq. On September 22, 1980, the Administrator of the United States Environmental Protection Agency ("EPA"), in a final action, disapproved portions of Kentucky's State Implementation Plan ("SIP"). As discussed below, this plan was adopted by the Commonwealth of Kentucky in an effort to comply with nationally required air quality standards. A concomitant effect of the disapproval of Kentucky's SIP was the imposition by the Administrator of sanctions banning the construction of new or the modification of existing major air pollution sources in areas in which the national air quality standards were not being attained.
 
 
 2
 The petitioners, the Judge-Executives of three Kentucky counties where the national air quality standards were not being met in September of 1980, request this court to set aside the EPA's September 22, 1980, final action and remand this case to the Administrator with directions that the instant and all other decisions relating to the counties' compliance with national air quality standards be re-examined and re-determined in an adjudicatory proceeding. Although the petition for review addresses a single final action of the Administrator, namely his September 22, 1980, disapproval of Kentucky's SIP and imposition of sanctions, the petitioners have attempted to have us review other final actions as to which no petition has been filed and also to supplement the record to demonstrate that subsequent nonfinal actions of the EPA have been arbitrary, capricious or not according to law.
 
 
 3
 For the reasons discussed infra, we find that the only matter properly before this court is the validity of the Administrator's September 22, 1980, final action. We further find that in promulgating this final action, the EPA Administrator neither overstepped the bounds of his authority nor made decisions that were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A). Accordingly, we determine that the EPA did not err in issuing its final action.
 
 I.
 A.
 
 4
 The CAA, a comprehensive statutory scheme designed to control air pollution, was first enacted in 1955, and there have been frequent amendments to the Act, most notably in 1970 and 1977. A combined state and federal program to control air pollution was formulated in the 1970 amendments to the Act. As part of the 1970 amendments, Congress charged the EPA with promulgating national ambient air quality standards ("NAAQS") for a variety of air pollutants. CAA Sec. 109, 42 U.S.C. Sec. 7409. These standards are subdivided into two major groups: primary ambient air quality standards and secondary ambient air quality standards. Id. The primary standards "are requisite to protect the public health," CAA Sec. 109(b)(1), 42 U.S.C. Sec. 7409(b)(1), while the secondary standards are "requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air," CAA Sec. 109(b)(2), 42 U.S.C. Sec. 7409(b)(2). The standards relevant to the case before us are those governing photochemical oxidants--a pollutant commonly known as ozone. These standards are codified at 40 C.F.R. Sec. 50.9 (1984).
 
 
 5
 Each state has the "primary responsibility" for ensuring that its air meets NAAQS. CAA Sec. 107(a), 42 U.S.C. Sec. 7407(a). In order to fulfill its responsibility, each state must submit to the EPA Administrator a state implementation plan ("SIP") that provides for the attainment of NAAQS within its borders. CAA Sec. 110(a)(1), 42 U.S.C. Sec. 7410(a)(1). The Administrator must approve a SIP if it meets the criteria set forth in CAA Sec. 110(a)(2)(A)-(H), 42 U.S.C. Sec. 7410(a)(2)(A)-(H).
 
 
 6
 The states were to achieve NAAQS by 1975, but many states, including Kentucky, failed to meet NAAQS by the statutory deadline. As a result of this widespread nonattainment, Congress amended the CAA in 1977 by adding Part D to Title I of the Act. CAA Secs. 171-178, 42 U.S.C. Secs. 7501-08. Part D applies only to areas in which NAAQS have not been attained ("nonattainment areas"). Under Part D, the states with nonattainment areas were to adopt SIPs that would accomplish attainment of primary NAAQS not later than December 31, 1982. These revisions were to be submitted to the Administrator by January 1, 1979, and were to be approved or disapproved by July 1, 1979. Any state that did not have an approved SIP that provided for primary NAAQS attainment not later than 1982 was subject to a moratorium on the construction of new "major stationary sources"[1] of pollution and on the "major modification"[2] of existing major sources in nonattainment areas. CAA Sec. 110(a)(2)(I), 42 U.S.C. Sec. 7410(a)(2)(I).[3] In order to ensure the timely submission of Part D SIP revisions, Congress also imposed funding restrictions on nonattainment areas. CAA Sec. 176(a), 42 U.S.C. Sec. 7506(a); CAA Sec. 316(b), 42 U.S.C. Sec. 7616(b). When funding restrictions are invoked, the EPA and the Department of Transportation may not approve any projects or award any grants that would increase pollution, with certain exceptions not relevant here, in nonattainment areas in which the Administrator finds that the state failed to submit or to make reasonable efforts to submit a plan that "considers" each of the Part D requirements. CAA Sec. 176(a); 42 U.S.C. Sec. 7506(a). Under CAA Sec. 316(b), 42 U.S.C. Sec. 7616(b), the EPA also has the discretion under the foregoing circumstances to limit funds for the construction of sewage treatment facilities. These sanctions continue in effect until an approved plan is developed by the state or the EPA.
 
 B.
 
 7
 On March 3, 1978, the EPA designated Boone, Campbell and Kenton counties, part of the greater Cincinnati area, as nonattainment areas with respect to the ozone NAAQS. 43 Fed.Reg. 8962 (1978).[4] In Part D of the Act, however, Congress made an exception for ozone attainment for states that demonstrated they could not attain the ozone NAAQS by December 31, 1982, despite the implementation of all reasonably available control measures. CAA Sec. 172(a)(2), 42 U.S.C. Sec. 7502(a)(2). If the EPA approved a plan showing that the necessary reduction of ozone could not be achieved in a state by December 31, 1982, the state's attainment date for ozone NAAQS could be extended up to December 31, 1987. CAA Sec. 172(c), 42 U.S.C. Sec. 7502(c). Kentucky was one of the states that qualified and applied for more time to attain the reduction of ozone. States receiving the time extension were required to submit second SIP revisions that provided for attainment of ozone NAAQS by December 31, 1987, and that complied with Part D in its entirety. In addition, the states receiving time extensions were required to "establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program" in nonattainment areas. CAA Sec. 172(b)(11)(B), 42 U.S.C. Sec. 7502(b)(11)(B). To satisfy the inspection and maintenance program ("I/M") requirement and gain the time extension, a state had to enact legislation implementing an I/M program by June 30, 1979.
 
 
 8
 Because the Kentucky legislature meets only bi-annually, the EPA proposed to conditionally approve Kentucky's second SIP revision and grant the Commonwealth an extension until June 30, 1980, to pass legislation implementing an I/M program. 44 Fed.Reg. 65,781 (1979). The Federal Register notice proposing the conditional approval, however, warned the Commonwealth that if it failed to submit legislative authorization for the implementation of an I/M program in the involved counties, the conditional approval of the SIP would be withdrawn and the nonattainment areas would be subject to the Act's penalties for noncompliance, such as the construction moratorium. Id. On January 25, 1980, the conditional approval took effect. 45 Fed.Reg. 6092 (1980). In the notice of approval the EPA stated:
 
 
 9
 If the Commonwealth fails to submit in a timely manner the required materials needed to meet a condition, the EPA will publish a Federal Register notice shortly after the expiration of time limit for submission. The notice will announce that the conditional approval is withdrawn, the SIP is disapproved and Section (a)(2)(I) [construction moratorium] restrictions on growth are in effect.
 
 
 10
 Id. at 6093.
 
 
 11
 The Kentucky legislature considered an I/M program during its 1980 session but failed to enact a bill implementing the program by the General Assembly's April 15, 1980, adjournment date. Thus, Kentucky failed to implement an I/M program by the July 30, 1980, deadline. On June 2, 1980, the EPA Regional Director wrote the Governor of Kentucky that because the legislature had adjourned without enacting legislation implementing an I/M program, the EPA could no longer consider that the Commonwealth was making reasonable efforts to provide authorization for an I/M program. The EPA made this determination after encouraging counties in nonattainment areas to finance and implement local I/M programs. Boone County, after the instant petition for review was filed, adopted a local I/M ordinance and ultimately developed an implementation plan, but Kenton and Campbell counties did not. Therefore, on September 19, 1980, the EPA proposed to limit certain federal funding assistance to Campbell and Kenton counties, 45 Fed.Reg. 62,506 (1980), as heretofore discussed.
 
 
 12
 This proposal became final and the federal funding restrictions were imposed on December 12, 1980. 45 Fed.Reg. 81,752 (1980).[5] On September 22, 1980, the EPA disapproved Kentucky's 1979 ozone SIP revisions for Boone,[6] Campbell and Kenton counties, 45 Fed.Reg. 62,810 (1980), and imposed the construction moratorium on the nonattainment areas. The petition for review now before us is directed only to this September 22, 1980, final action.
 
 II.
 
 13
 As before indicated, petitioners raise several issues that we conclude are not properly before this court either because timely petitions for review were not filed or because the issues are not ripe for review.
 
 
 14
 The petitioners challenge the EPA's March 3, 1978, designation of Boone, Campbell and Kenton counties as nonattainment areas with respect to the ozone NAAQS. 43 Fed.Reg. 8962 (1978). Section 307(b)(1) of the Act, 42 U.S.C. Sec. 7607(b)(1), requires that petitions for review of a final action of the Administrator be filed with the court of appeals within sixty days after the notice of the rulemaking appears in the Federal Register. The statutory deadline for the filing of petitions for review is jurisdictional. Lloyd A. Fry Roofing Co. v. EPA, 554 F.2d 885, 892-93 (8th Cir.1977). Neither Kentucky nor any of the counties filed a timely petition for review of the nonattainment designation. Accordingly, we hold that the issue is not before this court because review was not sought within the statutory period.
 
 
 15
 The petitioners also challenge the conditional approval of Kentucky's SIP revisions, 45 Fed.Reg. 6092 (1980). It is difficult to see how petitioners were adversely affected by this approval because, if conditional approval had not been made, sanctions would have been imposed in 1979. In any event, we find that this claim is not before the court because the counties did not file a timely petition for review. CAA Sec. 307(b)(1), 42 U.S.C. Sec. 7607(b)(1).
 
 
 16
 The petitioners also challenge the Administrator's imposition of federal funding restrictions on Boone, Campbell and Kenton counties. The EPA proposed the funding limitations on September 19, 1980. 45 Fed.Reg. 62,506 (1980). The limitations became a final rule on December 12, 1980. 45 Fed.Reg. 81,75 2 (1980). The petitioners failed to file a timely petition for review of the Administrator's December 12, 1980, action. CAA Sec. 307(b)(1), 42 U.S.C. Sec. 7607(b)(1). The petitioners contend, however, that their objection to the federal funding restrictions is encompassed by their November 18, 1980, petition for review of the Administrator's final action of September 22, 1980, in which he disapproved Kentucky's SIP and imposed the construction ban. This contention is without merit. The petitioners are attempting to circumvent the Act's procedural requirements. If the petitioners wished to challenge the Administrator's December 12, 1980, final action they should have filed a timely petition for review of that action. That petition then could have been consolidated with the petition for review of the Administrator's September 22, 1980, final action that is presently before this court.
 
 
 17
 As mentioned earlier, the petitioning counties have attempted to supplement the record with evidence of actions of Kentucky and the EPA that were taken subsequent to the filing of their petition for review. Petitioners contend that this court has jurisdiction to review this supplemental evidence. Although we conclude, infra, that these subsequent actions are not properly before this court, a brief recitation of this evidence is nevertheless necessary at this point.
 
 
 18
 In late 1981 and early 1982, Kentucky re-evaluated the ozone air quality data for the greater Cincinnati area. Believing that the area could achieve the ozone NAAQS by the end of 1982 as CAA Part D required, Kentucky concluded that the extension of its ozone attainment date to 1987 was no longer necessary. Consequently, on June 23, September 27, and November 3, 1982, the Kentucky Natural Resources and Environmental Protection Cabinet submitted 1982 SIP revisions to the EPA that were intended to demonstrate that the ozone NAAQS would be attained in the Cincinnati urban area by December 31, 1982. 48 Fed.Reg. 5120 (1983). The EPA reviewed Kentucky's submittal and preliminarily determined that all of the Part D requirements were met. Therefore, on February 3, 1983, subsequent to the filing of the petition for review in the instant case, the EPA proposed to designate Kenton and Campbell counties as attainment areas for ozone. 48 Fed.Reg. 5122 (1983). The EPA also proposed lifting the construction ban and the federal funding restrictions because the counties were in attainment. Id.
 
 
 19
 After the EPA received Kentucky's SIP submittal and after the EPA published its proposed rulemaking, NAAQS ozone violations were recorded at several sites in the greater Cincinnati area. These violations occurred in 1983 and thus indicated that attainment of the ozone NAAQS actually did not occur by the end of 1982. On July 25, 1984, the EPA reopened the comment period for Kentucky's 1982 SIP revisions for the Cincinnati urban area and proposed action on several portions of Kentucky's ozone SIP. 49 Fed.Reg. 29,973 (1984). First, the EPA proposed disapproval of Kentucky's demonstration that the greater Cincinnati area attained the ozone NAAQS by December 31, 1982. Second, the EPA proposed disapproval of Kentucky's SIP, as a whole, because the SIP failed to meet the Part D requirements of the CAA. No final Agency action has been taken on this proposal, however. Until the EPA presents its formal proposal, proceeds with the required notice and comment period, publishes its formal final decision in the Federal Register, and a party files a timely petition for review of the Agency's final action, the issue is not ripe for review by this court.
 
 III.
 
 20
 The petitioners, the Judge-Executives of the counties in the nonattainment areas, filed on November 18, 1983, a timely[7] petition for review of the EPA's September 22, 1980, disapproval of Kentucky's revised SIP and invocation of a moratorium as to pollution sources. The petitioners contend the EPA's actions in disapproving the SIP and invoking the moratorium were arbitrary and capricious or not according to law, and they urge this court to set aside the sanctions imposed by the Administrator. The EPA, of course, contends that its actions are reasonable and supported by law.[8]
 
 
 21
 When reviewing an EPA action concerning a SIP, "[t]his Court's standard of review ... is an extremely narrow one." National Steel Corp. v. Gorsuch, 700 F.2d 314, 320 (6th Cir.1983) (action challenging disapproval of portions of Michigan SIP). We must determine "whether the EPA followed the proper lawful procedures and acted within its statutory authority when it promulgated its final rulemaking and whether that rulemaking is constitutional." Id. The standards enunciated in section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 706(2)(A), are controlling. A reviewing court may set aside the Agency's actions only if it finds that the actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id.; Air Pollution Control District v. EPA, 739 F.2d 1071, 1079 (6th Cir.1984) (in order to justify reversal, the Administrator's actions "must be arbitrary and capricious, and essentially, go to the heart of the decision-making process."). In Northern Ohio Lung Association v. EPA, 572 F.2d 1143 (6th Cir.1978), this court stated:
 
 
 22
 Scrutiny of the facts does not end, however, with the determination that the [administrative officer] has acted within the scope of his statutory authority. Section 706(2)(A) [of the Administrative Procedure Act] requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment....
 
 
 23
 ... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.
 
 
 24
 Id. at 1148 (emphasis in original) (citations omitted) (quoting Buckeye Power, Inc. v. EPA, 481 F.2d 162, 171 (6th Cir.1973) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)). See also Cleveland Electric Illuminating Co. v. EPA, 572 F.2d 1150 (6th Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 256 (1978).
 
 
 25
 In their petition for review, the Judge-Executives contend that the Administrator's September 22, 1980, rulemaking was unconstitutional because it violated the tenth amendment and deprived the counties of valuable property rights without due process. The petitioners also claim that the Administrator acted arbitrarily when he disapproved portions of Kentucky's SIP on September 22, 1980. We first address the contention that the Administrator acted arbitrarily and then address the constitutional arguments.
 
 IV.
 
 26
 In 1979, Boone, Campbell and Kenton counties were Kentucky nonattainment areas with respect to the ozone NAAQS. Kentucky applied for, and the EPA granted the Commonwealth a time extension of the NAAQS attainment date for ozone. The CAA requires states receiving the time extension to submit SIP revisions that comply with Part D in its entirety. Part D of the Act provides that states receiving time extensions shall "establish a specific schedule for implementation of a vehicle emission control inspection and maintenance program" in nonattainment areas. CAA Sec. 172(b)(11)(B), 42 U.S.C. Sec. 7502(b)(11)(B). It is undisputed that the Commonwealth failed to enact legislation implementing an I/M program by the statutory deadline.
 
 
 27
 We find that the Administrator acted reasonably and in accordance with the Act when he determined that because Kentucky failed to enact I/M enabling legislation, the Commonwealth had failed to comply with Part D. Therefore, the Administrator correctly found that the SIP was not approvable. The Act provides that any state that does not have an approved SIP is subject to the construction moratorium. CAA Sec. 110(a)(2)(I), 42 U.S.C. Sec. 7410(a)(2)(I). When Kentucky did not comply with the statute, the Administrator disapproved the Commonwealth's SIP, as he was statutorily mandated to do, and he properly imposed the construction moratorium in nonattainment areas, namely Boone, Campbell and Kenton counties.
 
 V.
 A.
 
 28
 The petitioners contend that the Administrator's actions were unconstitutional because they deprived the counties of valuable property rights without due process. The petitioners maintain that they should have received an adjudicatory-type hearing before the Administrator by rule disapproved the Commonwealth's SIP and imposed the construction moratorium.
 
 
 29
 The petitioners concede that section 307(d)(1) of the Act, 42 U.S.C. Sec. 7607(d)(1), exempts the rulemaking at issue here from the adjudicatory hearing provisions contained in sections 553 through 556 and section 706 of the Administrative Procedure Act. They maintain, however, that the APA exemption is unconstitutional as applied to the counties. The petitioners claim that they had a due process right to a full-scale evidentiary hearing before the Administrator imposed the construction ban. Petitioners so contend although, it appears, the only issue that would have been adjudicated at such hearing would have been whether legislation had been adopted authorizing I/M programs. It is conceded that no such legislation had been adopted by Kentucky or these counties. It is quixotic for petitioners to contend that they have been unconstitutionally denied an adjudicatory-type hearing when the only determinative fact is not in dispute.
 
 
 30
 The Administrator's disapproval of Kentucky's SIP and imposition of the construction ban constitute rulemaking under the APA. See Northern Ohio Lung Association v. EPA, 572 F.2d 1143, 1148 (6th Cir.1978). Such rulemaking may be done without violating constitutional due process. Cleveland Electric Illuminating Co. v. EPA, 572 F.2d 1150, 1157-58 (6th Cir.), cert. denied, 439 U.S. 910, 99 S.Ct. 278, 58 L.Ed.2d 256 (1978).
 
 B.
 
 31
 The petitioners also claim that the EPA is contravening their tenth amendment rights by imposing the vehicle inspection and maintenance program directly on the Commonwealth, and in the wake of the Commonwealth's failure to act, directly on the counties.
 
 
 32
 It is undisputed that air pollution is a severe national problem. Congress has exercised its power under the Commerce Clause to regulate directly air pollution. In United States v. Ohio Department of Safety, 635 F.2d 1195 (6th Cir.1980), cert. denied, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981), this court was confronted with a case remarkably similar to the instant petition. Like the petitioners in the instant case, the State of Ohio contended that the regulation in question was, under the tenth amendment, an unconstitutional interference with its sovereignty. Ohio challenged an EPA regulation that required Ohio to withhold registration from vehicles that did not comply with applicable pollution standards. The Ohio Safety court, after carefully considering the opinion in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), upheld the regulation and found that a provision in the CAA permitting the EPA to enforce the regulation represented a lawful exercise by Congress of its Commerce power. 635 F.2d at 1205. On the authority of Ohio Safety, we would uphold the constitutionality of the EPA's action here, but as seen below, such is not necessary to our decision.
 
 
 33
 The petitioners here, relying on National League of Cities, maintain that the federal government's action is an unconstitutional direct federal intrusion into integral state functions in violation of the tenth amendment. However, petitioners' tenth amendment argument obviously fails in light of the Supreme Court's recent opinion, Garcia v. San Antonio Metropolitan Transit Authority, --- U.S. ----, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), in which the Court explicitly overruled National League of Cities. In National League of Cities, the Court ruled that the Commerce Clause did not empower Congress to enforce the minimum-wage and overtime provisions of the Fair Labor Standards Act against the states "in areas of traditional governmental functions." 426 U.S. at 852, 96 S.Ct. at 2474. After National League of Cities, federal and state courts were required to identify "traditional governmental functions" for the purposes of state immunity under the Commerce Clause. In Garcia, the Court, recognizing that "the attempt to draw the boundaries of state regulatory immunity in terms of 'traditional governmental function' is not only unworkable but inconsistent with established principles of federalism," --- U.S. at ----, 105 S.Ct. at 1007, held that the states' role in the federal system is guaranteed by the constitutional structure of the federal government itself rather than by external limits imposed on the Commerce power via the tenth amendment. Id. at ---- - ----, 105 S.Ct. at 1015-18. We find that the EPA's invocation of the construction moratorium was clearly a constitutional exercise of Congress' power under the Commerce Clause.
 
 VI.
 
 34
 We therefore conclude that the relief sought under the petition for review is DENIED.
 
 
 
 [1]
 A "major stationary source" is one that emits or that has the potential to emit 100 tons or more per year of a pollutant subject to regulation under the Act. 40 C.F.R. Sec. 52.24(f)(4)(i)(a) (1984)
 
 
 [2]
 A "major modification" is any physical change in the method of operation of a major stationary source that would result in a significant net increase in a pollutant subject to regulation under the Act. 40 C.F.R. Sec. 52.24(f)(5)(i) (1984)
 
 
 [3]
 Because many states did not have approved Part D plans by the statutory deadline, and because no state had voluntarily incorporated the construction ban into its SIP, the EPA promulgated an interpretive rule that articulated the ban and inserted it into each SIP. 40 C.F.R. Sec. 52.24 (1984)
 
 
 [4]
 As discussed, infra, neither Kentucky nor any of the counties filed a timely petition for review of that designation
 
 
 [5]
 As discussed, infra, petitioners failed to file a timely petition for review of the imposition of the funding restrictions
 
 
 [6]
 The SIP for Boone County was later approved on November 30, 1981, and the federal funding restrictions and construction moratorium were lifted. 46 Fed.Reg. 58,060 (1981). The petition for review is therefore moot as to Boone County
 
 
 [7]
 Section 307(b)(1) of the Act, 42 U.S.C. Sec. 7607(b)(1), requires that a petition for review of a final action of the Administrator be filed with the court of appeals for the appropriate circuit within sixty days from the date the notice of the action appears in the Federal Register
 
 
 [8]
 Respondents contend that petitioners do not have standing to maintain the petition in this court. The basis of respondents' contention is that petitioners bring this petition in their individual capacities and, as such, allege no injury in fact to themselves. However, we believe that a fair interpretation of the petition is that each petitioner is acting in his official capacity as Judge-Executive of his respective county. Accordingly, we determine that petitioners do have standing in this court