**CHAPEL ELECTRIC COMPANY, Plaintiff,**

**v.**

**Valdas ADAMKUS, et al., Defendants.**

**No. C-3-85-940.**

United States District Court, S.D. Ohio, W.D.

March 31, 1986.

Robert P. Bartlett, Dayton, Ohio, for plaintiff.

Eric Cohen, U.S. E.P.A., Chicago, Ill., and Dale A. Goldberg, Asst. U.S. Atty., Dayton, Ohio, for defendant Valdas Adamkus.

Terence L. Fague and Edward J. Dowd, Dayton, Ohio, for defendant Wagner-Smith Co.

Kenneth R. Pohlman, Asst. Pros. Atty., Dayton, Ohio, for defendants Claude P. Malone, Jr., Adm'r of Montgomery County, Paul J. MacIlwaine, Charles J. Curan and Donna B. Moon.

DECISION AND ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOC. # 7, # 10 and # 12) AND OVERRULING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 9); JUDGMENT ORDERED ENTERED FOR DEFENDANTS; TERMINATION ENTRY

RICE, District Judge.

This case is before the Court on cross-motions for summary judgment made by Plaintiff (Doc. # 9) and Defendants United States of America (Valdas Adamkus) (Doc. # 7), Montgomery County (Commissioners MacIlwaine, Curran and Moon and Administrator Malone) (Doc. # 10) and Wagner-Smith Company (Doc. # 12). For the reasons set forth below, the Court concludes that the interpretation by the Environmental Protection Agency (EPA) of its regulations governing protests of procurement actions is not arbitrary and capricious, and accordingly that it must overrule the Plaintiff's Motion seeking Summary Judgment and grant Defendants' Motions for Summary Judgment.

I. *Procedural Background*

On January 22, 1985, Defendant Montgomery County advertised for bids for construction to expand and modify the Regional Waste Water Treatment Plant, a project funded in part by a grant award from EPA Region V to the County pursuant to Section 201 of the Clean Water Act, 33 U.S.C. § 1281. The bids received were publically opened on April 17, 1985. At that time, a bid of $6,825,000 by Defendant Wagner-Smith Company was the apparent low, responsive, and responsible bid. Plaintiff Chapel Electric Company's bid of $6,832,000 was the next lowest bid.

On May 3, 1985, Plaintiff, by its President, sent a letter (Exh. A to Doc. # 9) to the County Prosecutor, with copies to the members of the County Commission and County Administrator, complaining that Wagner-Smith Company's bid was non-responsive to the County's invitation to bid. Specifically, the letter alleged that Wagner-Smith had failed to complete a "Minority Business Enterprise (MBE) Procurement—Affected Trades" form, and, therefore, determination of Wagner-Smith's compliance with MBE utilization percentages would be impossible. The letter further directed the County Prosecutor's attention to *Dayton ex rel. Scandrick v. McGee,* 67 Ohio St.2d 356, 423 N.E.2d 1095 (1981), which prohibits a political subdivision from waiving bidding requirements after the bids are submitted.

On May 7, 1985, the County Commissioners voted two to one to preliminarily award the contract to Wagner-Smith. After the Commissioners' vote, Mr. Walter Reynolds, representing Plaintiff, argued to the Commission that Wagner-Smith's bid was non-responsive to the Commission's invitation.

He did not mention Chapel Electric's letter to the County Prosecutor.

On May 14, 1985, Plaintiff filed a formal protest with the County Commission which reiterated the arguments set out in Plaintiff's May 3rd letter to the County Prosecutor. The County Commissioners voted to deny Plaintiff's protest on June 18, 1985. On June 20, 1985, Plaintiff filed a protest appeal with the United States EPA Region V.

By a decision dated December 5, 1985 (Exh. B to Doc. # 9), the Regional Administrator of EPA Region V dismissed Plaintiff's protest appeal because he found that the protest was not timely filed with the County Commission. Specifically, he found that Chapel Electric had shown it was aware of the basis of its protest at the time that it wrote the May 3rd letter, and, therefore, that it should have filed the protest with the County Commission at the latest by May 10, 1985.

On December 19, 1985, Plaintiff filed this lawsuit seeking judicial review of the Administrator's dismissal of its protest appeal.

II. *Regulations Involved*

Protests of parties aggrieved by an EPA grant recipient's procurement actions are governed by 40 C.F.R. Part 33, Subpart G.[1] The regulations specifically relevant to Plaintiff's protest and appeal are 40 C.F.R. §§ 33.1110(a), 33.1125(d) and 33.1130(b). 40 C.F.R. § 33.1110(a) defines "protest":

> A "protest" is a written complaint concerning the recipient's solicitation or award of subagreement. It must be filed with the recipient by a party with a direct financial interest adversely affected by a recipient's procurement action.

40 C.F.R. § 33.1130(b) sets out the EPA Administrator's power to dismiss a protest appeal from an untimely filed protest:

> In cases not involving improprieties in the solicitation [The within case involves no such allegation], the award official may dismiss as untimely a protest appeal if the adversely affected party did not file the initial protest with the recipient within seven calendar days of the date the basis for the protest was known or should have been known, whichever is earlier.

40 C.F.R. § 33.1125(d) sets out the EPA Administrator's power to dismiss a protest appeal when the appeal is untimely filed:

> The award official will only consider written protest appeals received by the appropriate Counsel's office within seven calendar days after the adversely affected party receives the recipient's determination of protest. However, the adversely affected party can meet the seven-day notice requirement by telegraphing the Counsel within the seven-calendar-day period of its intent to file a protest appeal, provided the adversely affected party submits a complete protest appeal within seven calendar days of the date it sends the telegram. If the seventh day falls on a Saturday, Sunday or holiday, the next working day shall be the last day to submit a protest appeal.

III. *Reasonableness of the Interpretation by the EPA of Its Regulations*

Plaintiff urges the Court to find the Administrator's interpretation of the regulations regarding the timeliness of protests is irrational, and accordingly that the Administrator's dismissal must be reversed. Specifically, Plaintiff argues that a party may not be "adversely affected by a recipient's procurement action" until the contract is

1. 40 C.F.R. Part 33, Subpart G, provides for protest rights based upon EPA assistance agreements. By its terms, it does not expressly preclude state rights of review of County Commission actions. Thus, Plaintiff might be able, if the statute of limitations permits, to seek review of the County Commission's denial of its protest under O.R.C. § 307.56, which provides in part:

> A person aggrieved by the decision of the board of county commissioners may appeal to the court of common pleas, as provided by and under the authority of Chapter 2506, of the Revised Code. The court shall advance such appeal when perfected for immediate trial.

*awarded* to another. Implicit in Plaintiff's argument is a construction of "adversely affected" which requires that a party *actually* lose the bidding, rather than merely discover that a lower bid has been made and that there is a *potential* that the bid will ultimately be lost. Plaintiff would argue that the language of the regulations on its face requires a "procurement action" to occur before a party may be adversely affected. Plaintiff, further, would limit the definition of procurement action to the solicitation of bids and the awarding of the contract.

The EPA, however, apparently has rejected this narrow definition of procurement action, and would include in the definition of procurement action any action taken to further the determination of who will perform the work for which bids are sought. Thus, the EPA apparently contends that at the opening of bids a party may be adversely affected because at that point the party should know that it will not be granted the contract unless lower bidders are disqualified, and thus that it is not in as good a position as before the bids were opened, when all bidders presumably had an equal chance of winning the contract.

In reviewing the opposing interpretations of the regulations, the Court's role is limited to a determination of whether the EPA acted arbitrarily and capriciously. *See, e.g., Princeton Combustion Research Laboratories, Inc. v. McCarthy,* 674 F.2d 1016, 1021 (3d Cir.1982). In reviewing the EPA's interpretation of its regulations under the arbitrary and capricious standard, the Court is not entitled to substitute the judgment for that of the agency or to require the agency to apply what the Court believes to be the best or most reasonable interpretation of the statute. The Court is only empowered to overturn an agency's interpretation of its rules under the arbitrary and capricious standard when it finds the agency has acted irrationally or not in accordance with the law. *See Dressman v. Costle,* 759 F.2d 548, 555 (6th Cir. 1985).

In the present action, the Court believes that Plaintiff's construction of the regulation is more reasonable than that of the EPA. Plaintiff's interpretation would provide bidder with clear notice of the time by which they would have to file a protest and would allow them to seek informal resolution of disputes concerning the responsiveness of opposing bids without risking the loss of the right to make a formal protest. Further, given the ambiguous language of the regulations, as indicated by the confusion arising in this case, it would seem reasonable to read the timeliness requirements liberally. However, the Court is not empowered to require the EPA to accept the reading of the rules that the Court believes most reasonable. The Court cannot say that EPA's interpretation of these rules is unreasonable. Given the lack of definition within the regulations of "procurement action" and "adversely affected," the Court cannot say that the implicit definitions given those terms by the EPA are unreasonable or not in accordance with the law. It is not unreasonable to view the opening of bids as a "procurement action" or to define one as "adversely affected" as one having less chance of ultimately receiving the contract award. Thus, while the Court believes that Plaintiff's definition of these terms is more consistent with the realities of competitive bidding, it cannot find the EPA's interpretation of the regulations irrational or not in accordance with law. Therefore, Plaintiff's argument for reversing the EPA's dismissal of its protest appeal must be rejected.

While Plaintiff has not raised it, an alternative argument for reversal of the EPA's decision is that the May 3rd letter to the County Prosecutor constituted a properly phrased and delivered protest to Montgomery County as the recipient of the EPA funds. Copies of the letter sent to the County Prosecutor were sent to each County Commissioner and to the County Administrator. Further, the letter, as noted above, set out detailed reasons for Plaintiff's belief that Wagner-Smith's bid was non-responsive to the invitation for bids. A

protest of a procurement action is not required to state formally that it is a protest as long as its contents indicate its purpose. *See* 40 C.F.R. § 33.1110(a) ("a 'protest' is a written complaint..."). The Court believes that the May 3rd letter does plainly indicate that its purpose is to complain of the non-responsiveness of the Wagner-Smith bid, and as such could be construed as a "protest" within the meaning of the regulations.

However, if the Court were to construe the May 3rd letter as a protest within the meaning of the regulations, Plaintiff's protest appeal to the EPA of June 20, 1985, would not have been timely. On May 7, 1985, the County Commission voted to accept Wagner-Smith's bid and award it the contract. This action indicated that the County Commission had found Wagner-Smith's bid responsive, and thus had rejected the basis of the May 3rd letter's complaint. If the May 3rd letter is construed as a protest, then the May 7th vote must be viewed as an adverse determination of that protest. At that meeting, the Commission voted to accept Wagner-Smith's bid as the "lowest and best" bid on the contract. The 20-day delay, required by O.R.C. § 305.23, before funds could be expended did not affect the finality of the Commission's vote. Further, the statements made by Commissioner MacIlwaine at the meeting indicate that the Commission considered and rejected the basis of Plaintiff's protest at that time, and the statements of Mr. Walter Reynolds, representing the Plaintiff, indicate that he believed the Commission had rejected Plaintiff's protest. Under 40 C.F.R. § 33.1125(d), a party has seven days from the determination of a protest to file its appeal with the EPA. Plaintiff's appeal was filed more than 40 days later. Thus, if the Court were to construe Plaintiff's May 3rd letter as a protest, it would have to find the June 20th appeal untimely.

In sum, the Court cannot find that the EPA acted arbitrarily and capriciously in dismissing Plaintiff's protest appeal. Accordingly, Plaintiff's Motion for Summary Judgment must be overruled, and the Motions for Summary Judgment of each of the Defendants must be granted. Judgment is hereby ordered entered against Plaintiff and in favor of each of the Defendants.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.