UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

 

No. 95-1780

PAN AMERICAN GRAIN MFG. CO., INC.,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

 

ON PETITION FOR REVIEW OF AN ORDER OF THE

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

 

Before

Cyr, Circuit Judge, 

Coffin and Bownes, Senior Circuit Judges. 

 

Romano A. Zampierollo-Rheinfeldt for petitioner. 
Banumathi Rangarajan, Trial Attorney, U.S. Department of Justice, 
Environmental Defense Section, with whom Lois J. Schiffer, Assistant 
Attorney General, Joseph A. Siegel, Assistant Regional Counsel, U.S. 
Environmental Protection Agency, and Michael Prosper, Office of 
General Counsel, U.S. Environmental Protection Agency, were on brief
for respondent.

 

September 6, 1996
 

CYR, Circuit Judge. Petitioner Pan American Grain CYR, Circuit Judge 

Manufacturing Company, Inc. presents two claims on appeal.

First, it challenges the United States Environmental Protection

Agency's ("EPA") November 1991 designation of the Municipality of

Guaynabo, Puerto Rico ("Guaynabo"), as a nonattainment area under

the National Ambient Air Quality Standards ("NAAQS") promulgated

by the EPA pursuant to the Clean Air Act, 42 U.S.C. 7401-7671

("CAA"). Second, petitioner contests the EPA's May 1995 approval

of a revised State Implementation Plan ("SIP") issued by the

Commonwealth of Puerto Rico, which banned further use of clam-

shell devices in grain removal operations to ensure attainment of

the NAAQS PM10 standard prescribed for Guaynabo. We conclude

that the first claim is time-barred and reject the second claim

on the merits. 

BACKGROUND BACKGROUND 

The CAA was enacted "to protect and enhance the

Nation's air quality, to initiate and accelerate a national

program of research and development designed to control air

pollution, to provide technical and financial assistance to the

States in the execution of pollution control programs, and to

encourage the development of regional pollution control pro-

grams." Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 

1256 (1st Cir. 1996) (citing 42 U.S.C. 7401(b) (1988)). In

furtherance of these objectives, the EPA promulgated NAAQS, which

prescribe, inter alia, maximum allowable concentration levels of 

fine particulate matter with an aerodynamic diameter not greater

2

than a nominal ten micrometers ("PM10"). See 42 U.S.C.  

7409(a); see also id. 7407(d)(4)(B). The CAA requires States 

to develop and maintain implementation plans for achieving

compliance with the NAAQS. See id. 7410(a). Accordingly, each 

State, as well as the Commonwealth of Puerto Rico ("Common-

wealth"), is required to submit for EPA approval a SIP which

specifies the manner in which compliance with NAAQS is to be

achieved. See id. 7407; American Auto. Mfr. Ass'n. v. Commis- 

sioner, Mass. Dept. of Environmental Protection, 31 F.3d 18, 21 

(1st Cir. 1994); Sierra Club v. Larson, 2 F.3d 462, 464 (1st Cir. 

1993). A region that has not attained compliance with NAAQS is

designated a "nonattainment" area, see 42 U.S.C. 7407(d)(1)(A), 

which imposes upon the State the obligation to include more

stringent provisions in its SIP. See id. 7513. 

Under the 1990 amendments to the CAA, by operation of

law, Guaynabo became a designated nonattainment area for PM10,

based upon NAAQS violations which had occurred prior to January

1, 1989. See id. 7407(d)(4)(B), 7513(a); 56 Fed. Reg. 11,105. 

Accordingly, on March 15, 1991, the EPA published notice in the

Federal Register announcing its initial designation of Guaynabo 

as a "moderate" nonattainment area for PM10. See 42 U.S.C.  

7502(a)(1) (permitting EPA to "classify" nonattainment areas).

On November 6, 1991, the EPA issued a final rule codifying its

PM10 nonattainment designation for Guaynabo. See id.  

7407(d)(2); 56 Fed. Reg. 56,694. 

Thereafter, the Puerto Rico Environmental Quality Board

3

("EQB") conducted a public hearing and received comments on a

proposed SIP revision which would achieve PM10 compliance in

Guaynabo. On November 14, 1993, the EQB submitted its SIP

revision to the EPA; in March of 1994, it supplemented the

revised SIP. On August 11, 1994, the EPA published for comment

its proposed full approval of the SIP revision. See 59 Fed. Reg. 

41,265. On May 31, 1995, after conducting public meetings and

evaluating the comments received, including those submitted by

petitioner, the EPA approved the revised SIP and published notice

of its approval and promulgation. See 60 Fed. Reg. 28,333. The 

instant petition for review was filed on July 28, 1995.

DISCUSSION DISCUSSION 

A petition to review a final EPA action must be filed

in the appropriate court of appeals within sixty days after

notice of the action appears in the Federal Register. See 42 

U.S.C. 7607(b)(1); e.g., Harrison v. PPG Indus., Inc., 446 U.S. 

578, 588-92 (1980). Appellate review is governed by the Adminis-

trative Procedure Act ("APA"), 5 U.S.C. 706(2)(A), and substan-

tial deference is accorded final agency actions, which will not

be set aside unless "`arbitrary, capricious, an abuse of discre-

tion, or otherwise not in accordance with the law.'" Citizen's 

Awareness Network, Inc. v. United States Nuclear Reg. Comm'n, 59 

F.3d 284, 290 (1st Cir. 1995) (citations omitted); Puerto Rico 

Sun Oil Co. v. EPA, 8 F.3d 73, 77 (1st Cir. 1993). The deference 

due "is magnified when the agency interprets its own regula-

tions." Puerto Rico Aqueduct & Sewer Auth., EPA, 35 F.3d 600, 

4

604 (1st Cir. 1994) (citing Arkansas v. Oklahoma, 503 U.S. 91, 

111-12 (1992)). 

We inquire whether the challenged EPA action was based

on the wrong factors or whether there has been a clear error in

judgment. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 

402, 416 (1971). Although searching and careful, review under

the `arbitrary and capricious' standard is narrow in scope. See 

Adams v. EPA, 38 F.3d 43, 49 (1st Cir. 1994). Moreover, we are 

not empowered to substitute our judgment for that of the agency.

See id.; Caribbean Petroleum Corp. v. EPA, 28 F.3d 232, 234 (1st 

Cir. 1994) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. 

Auto Ins. Co., 463 U.S. 29, 43 (1983)).  

I I

Petitioner's challenge to the EPA's 1991 designation of

Guaynabo as a PM10 nonattainment area is time-barred, see 42 

U.S.C. 7607(b)(1) (prescribing 60-day period), since the

petition for review was filed in July 1995, three and one-half

years after the designation. Consequently, we lack appellate

jurisdiction. Petitioner attempts to circumvent the time-bar by

claiming that the 1991 PM10 nonattainment designation did not

constitute "final agency action" for purposes of judicial review

under 42 U.S.C. 7607(b)(1), but became final in May 1995 when

the EPA approved the revised SIP issued by the Commonwealth.

Petitioner's interpretation lacks supporting authority and

conflicts with the plain language of the statute.

In its 1990 amendments to the CAA, Congress directed

5

the EPA to publish notice in the Federal Register announcing non- 

attainment designations under 42 U.S.C. 7407(d)(4)(B). See id. 

7407(d)(2)(A). On November 6, 1991, the EPA published its PM10

nonattainment designation for Guaynabo, thereby constituting its

designation a final EPA action in accordance with its terms: 

"today's codification of the initial designations for PM10 in 40

CFR part 81 represents final agency action for the purpose of 

section 307(b) of the CAA [42 U.S.C. 7607(b)(1).]" 56 Fed.

Reg. 56,706 (emphasis added). Cases in other circuits likewise

indicate that such nonattainment designations constitute final

agency action. See Dressman v. Costle, 759 F.2d 548, 553 (6th 

Cir. 1985); City of Seabrook v. EPA, 659 F.2d 1349, 1370 (5th 

Cir. 1981) ("We think that the designations [as NAAQs'

nonattainment areas] were `final actions' subject to immediate,

direct review under [42 U.S.C. 7607(b)(1)] when they were

promulgated."), cert. denied, 459 U.S. 822 (1982); United States 

Steel Corp. v. EPA, 595 F.2d 207, 211, clarified, 598 F.2d 915 

(5th Cir. 1979). See also United States Steel Corp. v. EPA, 605 

F.2d 283, 290 (7th Cir. 1979) (assuming, without discussion, that

designations [of NAAQS nonattainment areas] were open to immedi-

ate judicial review), cert. denied, 445 U.S. 939 (1980). We 

believe this to be both a permissible construction of the stat-

ute, see Chevron, U.S.A., Inc. v. Natural Resources Defense 

Council, Inc., 467 U.S. 837, 843 (1984), and, from an adminis- 

trative efficiency perspective, entirely rational. As the

required SIP revision process itself is protracted, it is not

6

irrational to conclude that Congress did not intend that it be

further extended indefinitely. See, e.g., FTC v. Standard Oil 

Co., 449 U.S. 232, 243 (1980) ("final agency action" status 

designed to promote "administrative efficiency"). Petitioner's

counterargument that Congress intended to defer judicial review

until the revised SIP has been promulgated is untenable, since it

misconstrues the plain language of the statute and misapprehends

the equally clear intent of Congress. Cf. Garcia v. Cecos Int'l 

Inc., 761 F.2d 76, 79 (1st Cir. 1985) (plain language of 42 

U.S.C. 6972(b), requiring sixty days' notice before commence-

ment of "private citizen" suit is "not a technical wrinkle or

superfluous formality that federal courts may waive at will . . .

[but] part of the jurisdictional conferral from Congress that

cannot be altered by the courts.").

As the EPA points out, Congress well understood how to

defer review had that been its intent. Indeed, it specifically

provided for deferred judicial review of classifications of PM10 

nonattainment areas until agency action has been taken on the SIP

or any SIP revision. Compare 42 U.S.C. 7502(a)(1)(B) with  

7407(d)(2)(B); see also supra p.3. Thus, the absence of a 

similar deferment for nonattainment designations affords confir- 

mation that these EPA actions were meant to be subject to immedi-

ate review. We therefore conclude that the PM10 nonattainment

designation for Guaynabo became a final agency action for purpos-

es of judicial review upon its publication by EPA in the Federal 

7

Register as directed in the 1990 CAA amendments.1 Thus, the 

petition for review is time-barred. 

II II

Petitioner next claims that it was "arbitrary and

capricious" to approve the revised SIP issued by the EQB. Since

the revised SIP comports with the statutory requirement for

ensuring attainment of the NAAQS for PM10 in a moderate non-

attainment area, this claim fails on the merits. 

Congress has mandated various SIP criteria as prerequi-

sites to EPA approval. See 42 U.S.C. 7410, 7513(a) and (b). 

The CAA generally allows States considerable latitude in deter-

mining how to meet these SIP criteria. See Train v. Natural 

Resources Defense Council, Inc., 421 U.S. 60, 65, 79, 87 (1975). 

In the instant case, the revised SIP submitted by the Common-

wealth won EPA approval following an agency review for complete-

ness and a finding that it reasonably ensured PM10 attainment in

Guaynabo. 

Petitioner contends that the EPA failed to provide

adequate responses to its objections to EPA's assessment of PM10

violations, its "modeling" of grain processing operations, and
 

1Petitioner's argument that the EPA "reopened" its non-
attainment designation during the SIP revision process is without
merit. Petitioner cannot revive its time-barred claim by solic-
iting an EPA response to petitioner's comment challenging the
designation, especially since the EPA in this case simply reiter-
ated its original position. See, e.g., American Iron and Steel 
Institute v. EPA, 886 F.2d 390, 398 (D.C. Cir. 1989) (permitting 
such bootstrapping would be contrary to congressional efforts to
secure prompt and final review of agency decisions; petitioner
cannot goad agency into replying, then claim agency "reopened"
issue), cert. denied, 497 U.S. 1003 (1990). 

8

the resulting RACT/RACM ("reasonably available control technolo-

gy/reasonably available control measures") requirements. We do

not agree. 

9

In each instance the EPA presented reasoned explana-

tions for approving the revised SIP notwithstanding petitioner's

objections. See 60 Fed. Reg. 28,335-37. Moreover, petitioner's 

criticisms, which go to the heart of the EPA's approval methodol-

ogy, involve areas in which "EPA's `expertise is heavily impli-

cated,' and we may not substitute our judgment for that of the

Administrator." Mision Industrial, Inc. v. EPA, 547 F.2d 123, 129 

(1st Cir. 1976) (citations omitted). Following a thorough review

of the record, and careful consideration of petitioner's claims,

we are not persuaded that petitioner has demonstrated "arbitrary

and capricious" agency action which would warrant disturbing

EPA's approval and promulgation of the revised SIP. See Citizens 

to Preserve Overton Park, Inc., 401 U.S. at 415. 

The petition for review is denied. The petition for review is denied. 

10