LLOYD A. FRY ROOFING
CO., Appellant,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY et
al., Appellees.

No. 76–1731.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1977.

Decided May 11, 1977.

Thomas J. Leittem, Kansas City, Mo., for appellant; John H. Altergott, Jr., Kansas City, Mo., on the brief.

Maryann Walsh, Atty., Land and Natural Resource Div., Appellate Section, U. S. Dept. of Justice, Washington, D. C., for appellee; Peter R. Taft, Asst. Atty. Gen., Edmund B. Clark, Atty., and Todd M. Joseph, E. P. A., Washington, D. C., on the brief.

Before MATTHES, Senior Circuit Judge, and WEBSTER and HENLEY, Circuit Judges.

MATTHES, Senior Circuit Judge.

The primary question for determination on this appeal is whether an alleged violator of section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 1857c–8(a)(1), is empowered to maintain a pre-enforcement action to test the validity of an abatement order issued by the Administrator of the Environmental Protection Agency (EPA). This is a question of first impression in the courts of appeals. Lloyd A. Fry Roofing Company (plaintiff) filed such an action against the United States Environmental Protection Agency, Russell Train, as EPA Administrator, Jerome H. Svore, as EPA Administrator for Region VII, and Earl J. Stephenson, as Director of the Enforcement Division for Region VII. The district court granted defendants' motion to dismiss the action for lack of subject matter jurisdiction and plaintiff has appealed from the dismissal.

I

Plaintiff operates an asphalt roofing plant in North Kansas City, Missouri. A by-product of its operation is a mixture of asphalt particles and gas which, after passing through the plant's air pollution control system, is emitted as a plume from a 100 foot high stack.

Effective January 5, 1969 the EPA Administrator approved certain regulations known as "Air Quality Standards and Air Pollution Control Regulations for the Kansas City Metropolitan Area," which had been submitted by Missouri as part of the state implementation plan pursuant to section 110(a) of the Clean Air Act, 42 U.S.C. § 1857c–5. Regulation V—Restriction of Emission of Visible Air Contaminants prohibits the discharge of air contaminants of a certain density, except where failure to meet the requirement stems solely from the presence of "uncombined water." Regulation V provides in pertinent part as follows:

A.  Restrictions Applicable to All Installations

No person may discharge into the ambient air from sources of emission whatsoever any air contaminant a.) of a shade or density equal to or darker than designated as No. 1 on the Ringelmann Chart, or b.) of such capacity [*sic*] as to obscure an observer's view to a degree equal to or greater than does smoke designated as No. 1 on the Ringelmann Chart.

B.  Exceptions

\*      \*      \*      \*      \*      \*

2. Where the presence of uncombined water is the only reason for failure of an emission to meet the requirements of Section A of this Regulation V, such sections shall not apply.

\* \* \* \* \* \*

C. Method of Measurement

The Ringelmann Chart shall be the standard in grading the shade or opacity of visible air contaminant emissions. The Executive Secretary may with the consent of the source operator employ any other means of measurement which give comparable results of greater accuracy.

On September 25, 1975, defendant Svore, as Regional Administrator of EPA, issued a notice informing plaintiff that it was in violation of Regulation V. The notice was based on visual smoke readings which indicated that the opacity of the plume from plaintiff's stack exceeded that allowable under Regulation V. Plaintiff requested an opportunity to confer with EPA representatives concerning the alleged violation. A formal evidentiary hearing was held on November 7, 1975 at EPA's Region VII office in Kansas City. By letter of January 9, 1976, plaintiff was directed to install sampling ports and scaffolding on the main stack in preparation for an EPA stack test. Plaintiff consented to the stack test, but refused to install the necessary equipment at its own expense. On March 9, 1976, defendant Stephenson, as Director of the Enforcement Division for Region VII, issued an order pursuant to section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 1857c–8(a)(1) directing plaintiff to eliminate opacity violations within the time schedule set forth therein.

On April 13, 1976, plaintiff filed a verified complaint seeking a temporary restraining order and a preliminary injunction to set aside the notice of violation and order as being unlawful, arbitrary, and capricious. Additionally, plaintiff sought a declaratory judgment finding Regulation V unconstitutional. Plaintiff alleged, in effect, that it was in compliance with the regulation because it was emitting a "wet" plume of less than twenty percent opacity and that the regulation was unconstitutionally vague because it contained no definition of "uncombined water" and failed to advise the industry of the scope of prohibited conduct. Jurisdiction was asserted under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., the federal question statute, 28 U.S.C. § 1331, the statute conferring jurisdiction over cases arising under statutes affecting commerce, 28 U.S.C. § 1337, and the mandamus statute, 28 U.S.C. § 1361.

On May 6, 1976, defendants filed a motion to dismiss the complaint insofar as it sought pre-enforcement review of the abatement order and judicial review of Regulation V. Defendants' motion to dismiss was based upon contentions that Congress intended to preclude pre-enforcement review of EPA abatement orders and to make the United States Court of Appeals the exclusive forum for review of federally approved state implementation plans. On June 25, 1976, the district court filed a judgment granting defendants' motion to dismiss. The court concluded, in an accompanying memorandum opinion, that it lacked jurisdiction to grant the relief requested in plaintiff's complaint. *See Lloyd A. Fry Roofing Co. v. United States Environmental Protection Agency*, 415 F.Supp. 799 (W.D.Mo.1976).

II

We address, initially, the question whether the district court correctly ruled that it lacked jurisdiction to review the abatement order issued against plaintiff. Plaintiff argues, and the defendants concede, that even in the absence of any provision for judicial review there is a strong presumption in favor of judicial review of final agency action, and that to preclude such review there must be a showing of "clear and convincing evidence" of a contrary legislative intent, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *see Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975); *Ortego v. Weinberger*, 516 F.2d 1005, 1009 (5th Cir. 1975); *Garvey v. Freeman*, 397 F.2d 600, 605 (10th Cir. 1968). The crux of the controversy is whether the

pertinent legislative history and the statutory scheme demonstrate that Congress intended to foreclose judicial review of an EPA compliance order in an action for pre-

1. Section 113 of the Clean Air Act, 42 U.S.C. § 1857c–8 provides in full:

§ 1857c–8. *Federal enforcement procedures—Determination of violation of applicable implementation plan or standard; notification of violator; issuance of compliance order or initiation of civil action upon failure to correct; effect of compliance order; contents of compliance order*

(a)(1) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section.

(2) Whenever, on the basis of information available to him, the Administrator finds that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the 30th day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such plan (hereafter referred to in this section as "period of federally assumed enforcement"), the Administrator may enforce any requirement of such plan with respect to any person—

(A) by issuing an order to comply with such requirement, or

(B) by bringing a civil action under subsection (b) of this section.

(3) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of section 1857c–6(e) of this title (relating to new source performance standards), section 1857c–7(c) of this title (relating to standards for hazardous emissions), or section 1857c–10(g) of this title (relating to energy-related authorities) is in violation of any requirement of section 1857c–9 of this title (relating to inspections, etc.), he may issue an order requiring such person to comply with such section or requirement, or he may bring a civil action in accordance with subsection (b) of this section.

(4) An order issued under this subsection (other than an order relating to a violation of

enforcement review instituted by an alleged violator.

Under section 113(a)(1) of the Clean Air Act, 42 U.S.C. § 1857c–8(a)(1),[1] whenever

section 1857c–7 of this title) shall not take effect until the person to whom it is issued has had an opportunity to confer with the Administrator concerning the alleged violation. A copy of any order issued under this subsection shall be sent to the State air pollution control agency of any State in which the violation occurs. Any order issued under this subsection shall state with reasonable specificity the nature of the violation, specify a time for compliance which the Administrator determines is reasonable, taking into account the seriousness of the violation and any good faith efforts to comply with applicable requirements. In any case in which an order under this subsection (or notice to a violator under paragraph (1)) is issued to a corporation, a copy of such order (or notice) shall be issued to appropriate corporate officers.

*Civil action for appropriate relief; jurisdiction; venue; notice to appropriate State agency*

(b) The Administrator may commence a civil action for appropriate relief, including a permanent or temporary injunction, whenever any person—

(1) violates or fails or refuses to comply with any order issued under subsection (a) of this section; or

(2) violates any requirements of an applicable implementation plan (A) during any period of Federally assumed enforcement, or

(B) more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section of a finding that such person is violating such requirement; or

(3) violates section 1857c–6(e), 1857c–7(c), or 1857c–10(g) of this title; or

(4) fails or refuses to comply with any requirement of section 1857c–9 of this title. Any action under this subsection may be brought in the district court of the United States for the district in which the defendant is located or resides or is doing business, and such court shall have jurisdiction to restrain such violation and to require compliance. Notice of the commencement of such action shall be given to the appropriate State air pollution control agency.

*Penalties*

(c)(1) Any person who knowingly—

(A) violates any requirement of an applicable implementation plan (i) during any period of Federally assumed enforcement, or (ii) more than 30 days after having been notified by the Administrator under subsection (a)(1) of this section that such person is violating such requirement, or

the Administrator finds that any person is in violation of a state implementation plan he must notify the alleged violator and the applicable state of his finding. If the violation continues unabated for thirty days, the Administrator may either issue an abatement order, which does not become effective until after the alleged violator has had an opportunity to confer with the Administrator, see 42 U.S.C. § 1857c–8(a)(4), or may commence a civil action for appropriate relief in the district court, pursuant to 42 U.S.C. § 1857c–8(b). Violators are subject to a fine of up to $25,000 for each day of violation and imprisonment for up to one year, see id. § 1857c–8(c).

▆▆▆▆ Section 702 of the Administrative Procedure Act, 5 U.S.C. § 702, does not confer jurisdiction to review agency action where the regulatory statute itself precludes judicial review, see Califano v. Sanders, —— U.S. ——, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977). Section 113 of the Act contains no provision specifically providing for pre-enforcement judicial review of an EPA abatement order, nor does it expressly preclude such review. A congressional intent to limit review need not be express, but may be drawn from a statute's legislative history, purpose, and design, see Consumer Federation of America v. FTC, 169 U.S.App.D.C. 136, 515 F.2d 367, 370 (1975); Hahn v. Gottlieb, 430 F.2d 1243, 1249 (1st

Cir. 1970). Our analysis begins, then, with a brief review of the legislative history of section 113, particularly the process by which it was enacted as part of the Clean Air Act Amendments of 1970, Pub.L.No. 91–604, 84 Stat. 1676 et seq.[2]

In 1970 the Ninety-First Congress began considering proposals to amend the Air Quality Act of 1967, Pub.L.No. 90–148, 81 Stat. 485 et seq. (1967) to provide a more effective program to improve air quality. In considering amendments to the previous legislation, Congress expressed an awareness of the need to expedite the implementation and enforcement of air quality standards, see, e. g., H.R.Rep.No. 91–1146, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.Code Cong. & Admin.News, p. 5356; S.Rep.No. 91–1196, 91st Cong., 2d Sess. (1970). In the area of enforcement, the House bill, H.R. 17255, 91st Cong., 2d Sess. (1970) directed the Secretary of Health, Education and Welfare to issue a notice of violation to persons who failed to comply with state implementation plan requirements not being enforced by the states. The House proposal further authorized the Secretary to request the Attorney General to bring suit in cases where the state's failure to enforce its implementation plan extends more than thirty days after notification of violation. In a new section 112, the House provided for federal enforcement

---

(B) violates or fails or refuses to comply with any order issued by the Administrator under subsection (a) of this section, or

(C) violates section 1857c–6(e), section 1857c–7(c), or section 1857c–10(g) of this title

shall be punished by a fine of not more than $25,000 per day of violation, or by imprisonment for not more than one year, or by both. If the conviction is for a violation committed after the first conviction of such person under this paragraph, punishment shall be by a fine of not more than $50,000 per day of violation, or by imprisonment for not more than two years, or by both.

(2) Any person who knowingly makes any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this chapter or who falsifies, tampers with, or knowingly renders inaccurate any monitoring device or method required to be maintained under this chapter; shall upon con-

viction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months, or by both.

2. The legislative history of the 1970 Amendments is fully discussed in Bonine, *The Evolution of "Technology Forcing" in the Clean Air Act,* Environment Reporter—Monograph No. 21 (July 25, 1975) [hereinafter cited as Bonine]; Luneburg, *Judicial Review Under the Clean Air Act Amendments of 1970,* 15 B.C.Ind. & Com.L. Rev. 667–78 (1974); Bolbach, *The Courts and the Clean Air Act,* Environment Reporter—Monograph No. 19, at 1–3 (July 12, 1974); Comment, *The Aftermath of the Clean Air Amendments of 1970: The Federal Courts and Air Pollution,* 14 B.C.Ind. & Com.L.Rev. 724–28 (1973); Note, *Clean Air Act Amendments of 1970: A Congressional Cosmetic,* 61 Geo.L.J. 153–59 (1972); see also *Train v. Natural Resources Defense Council,* 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975).

of federal emission standards for stationary sources. The House Amendments contained no language either specifically providing for or limiting judicial review.

The bill reported out by the Senate Committee on Public Works as S. 4358, 91st Cong., 2d Sess. (1970), established a new section 116(a) directing the Secretary to issue an abatement order to any person in violation of a state implementation plan not being enforced by the state or any federal stationary source emission standard requiring compliance to begin within seventy-two hours. The Secretary was additionally authorized to institute a civil action to obtain compliance with abatement orders. The Senate measure contained language specifically providing for pre-enforcement judicial review. The pertinent provision read as follows:

> (5) Any person subject to [an abatement order] and who undertakes compliance with such order shall not be foreclosed from instituting in the United States district court for the district in which the alleged violation occurred an action against the Secretary to challenge such order.

The House and Senate approved bills [3] were then referred to a Conference Committee for reconciliation. The conferees, in reconciling the two bills, followed in the main the Senate measure, which as a whole, was more stringent and detailed than its House counterpart. *See generally* Bonine, *supra* note 2, at 11–21; Berlin, *Federal Aid for Air and Solid Wastes Programs*, Environmental Reporter—Monograph No. 5, at 5 (October 2, 1970). The measure which emerged from the Conference Committee, and which was subsequently enacted into law as section 113 of the Act, 42 U.S.C. § 1857c–8, contained no language either providing for or limiting review. A reading of the report of the Conference Committee, *see* 1970 U.S.Code Cong. & Admin.News, p. 5374, sheds no light on the reason for the

deletion of the Senate-approved language preserving the right to pre-enforcement review.

Defendants point to the "silent deletion" as evidence of a "clear and convincing congressional intent" to preclude review. It is their theory that a person subject to an EPA abatement order can obtain review only by asserting his claim as a counterclaim or defense to a criminal or civil enforcement action commenced by the EPA pursuant to 42 U.S.C. § 1857c–8(b). This theory was adopted in large part by the district court, *see Lloyd A. Fry Roofing Co. v. United States Environmental Protection Agency, supra* at 805. Plaintiff contends that a more reasonable inference to be drawn from the deletion is that the Conference Committee recognized that the right to pre-enforcement review is so well established that specific provision for it need not be made. Thus, plaintiff argues, the deletion was meant to have no substantive effect.

■ We recognize, of course, that there being no express provision in the Act prohibiting pre-enforcement judicial review of EPA abatement orders, the Agency bears a heavy burden to overcome the strong presumption favoring such review, *see Dunlop v. Bachowski, supra,* 421 U.S. at 567, 95 S.Ct. 1851. Nevertheless, the legislative history, when viewed together with the statutory language, the structure of the statutory scheme, and its design, does not support plaintiff's conclusion. First, the action of the Conference Committee in deleting language that would have expressly preserved the right to pre-enforcement review, although not by itself conclusive, strongly suggests that the intent of the omitted portion was rejected in the bill as passed, *see Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186, 200, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).

Secondly, as defendants note in their brief, pre-enforcement judicial review is

---

**3.** The House and Senate bills, H.R. 17255 and S. 4358, are reprinted in full in *A Legislative History of the Clean Air Amendments of 1970* (Jan. 1974) (prepared by the Environmental Policy Div., Cong. Research Serv., Library of Cong., for the Senate Comm. on Public Works, Serial No. 93–18).

wholly inconsistent with the enforcement mechanism established by Congress. Section 113 of the Act, 42 U.S.C. § 1857c–8, provides for two alternative methods of enforcement. If a violation of the Act continues unabated for more than thirty days after issuance of a notice of violation, the Agency may either (1) immediately commence a civil action for injunctive or other relief; or (2) issue a compliance order, which is not effective until after an informal administrative conference. Under the second alternative, if the order issued by the Agency is not met within the specified time or informal efforts to abate prove unsatisfactory, the Agency is authorized to initiate an action in the district court to compel compliance. Pre-enforcement review would severely limit the effectiveness of the conference procedure as a means to abate violations of the Act without resort to judicial process. Under plaintiff's reading of the statute, the Agency could easily sidestep the possibility of pre-enforcement review by filing suit in the district court without prior issuance of an order pursuant to § 1857c–8(a)(1).

While this is a case of first impression, prior case law is entirely consistent with our conclusion. In *West Penn Power Co. v. Train*, 522 F.2d 302, 312 (3d Cir. 1975), for example, West Penn filed a complaint in the district court seeking injunctive and declaratory relief protecting it from any duty to comply with certain emission standards established as part of Pennsylvania's implementation plan after the Agency issued a notice of violation. In holding that the district court properly dismissed West Penn's complaint for lack of jurisdiction, the Third Circuit stated that at least two alternate avenues for relief would be available. First, the court noted, West Penn could seek redress in the state courts. *Id.* at 311. In describing the second route to relief the court stated as follows:

> The second route to relief is opened by 42 U.S.C. § 1857c–8(a)(4) * * *. At

the time West Penn brought this action, it had received only a notice of violation from Train. After receiving the notice, West Penn had the opportunity both for informally negotiating its differences with Train *and for presenting its cause to a federal district court, should EPA take formal steps to enforce the regulations allegedly violated* by West Penn. Thus West Penn has future relief available to it in both the state and federal courts.

*Id.* at 312 (emphasis added); *accord, Reichhold Chemicals v. EPA*, 8 Envir.Rep.Cases 1207 (7th Cir., June 2, 1975).

The Clean Air Act Amendments of 1970 were "a drastic remedy to what was perceived as a serious and otherwise uncheckable problem." *Union Electric Co. v. EPA*, 427 U.S. 246, 256, 96 S.Ct. 2518, 2525, 49 L.Ed.2d 474 (1976). Upon issuance of an EPA compliance order, the alleged violator is subject to penalties of up to $25,000 per day of violation and up to one year imprisonment. Plaintiff can protect itself from the unconscionable accumulation of large fines, however, by invoking the equitable doctrine of laches if the Agency fails to act promptly to seek enforcement.[4]

■ In sum, we are mindful that the pre-enforcement issue presents a close question. But we are persuaded by the legislative history of the Clean Air Act Amendments of 1970 to hold that plaintiff lacks authority to initiate and maintain litigation to challenge the EPA's order issued on March 9, 1976, and that plaintiff must assert its claims as a defense or counterclaim in any action brought by the Administrator of EPA under section 113 of the Clean Air Act, 42 U.S.C. § 1857c–8. The scales are balanced in favor of defendants by the action of the Conference Committee in deleting section 116(a)(5) of the Senate bill, which specifically and unequivocally sanctioned a pre-enforcement action by an alleged violator. Certainly Congress fully comprehended its power to grant access to

---

4. Considering the heavy penalty to which a violator may be subjected, the Administrator is admonished to proceed expeditiously to institute enforcement proceedings in the event the

alleged violator fails to comply with the timetable set forth in the abatement order so as to minimize any penalty which may be imposed.

the federal courts by any aggrieved person. And likewise, Congress knew that it could withhold such right. The course of passage of the House and Senate bills referred to *supra* convincingly demonstrate and reinforce this conclusion. The deletion of section 116(a)(5) of the Senate bill by the Conference Committee and the failure of the Congress itself to reincorporate a similar provision in the amended Clean Air Act impel us to rule that the Congress knowingly meant to and did foreclose plaintiff from maintaining this action.

For the foregoing reasons, we hold that the district court correctly determined that it lacked jurisdiction to review the disputed order.

### III

We turn then to plaintiff's contention that the district court erroneously determined that it was without jurisdiction to review the constitutionality of Regulation V of the state implementation plan.

Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 1857h–5(b)(1)[5] provides that review of the action of the Administrator in approving state implementation plans may be had within thirty days of such approval in the appropriate court of appeals. The district court held that since plaintiff had failed to challenge Regulation V in the court of appeals within thirty days or promulgation, its constitutional claims "were presented out of time and in the wrong forum." 415 F.Supp. at 806. It is plain-

tiff's contention that the exclusive jurisdiction of the court of appeals is not applicable here because the Regulation is challenged as being unconstitutionally vague on its face.[6] In plaintiff's view, a challenge based solely on a constitutional claim could not have been made in a section 307(b)(1) proceeding.

■ We disagree. Plaintiff's attack on the constitutionality of Regulation V falls directly within the purview of section 307(b)(1). As we noted in *Union Electric Co. v. EPA*, 515 F.2d 206 (8 Cir. 1975), the court of appeals, in reviewing the Administrator's action in approving state implementation plans, determines whether the Administrator's decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, *id.* at 214; *see* 5 U.S.C. § 706. In making this determination, the court necessarily considers whether the plan itself is constitutional. *See South Terminal Corp. v. EPA*, 504 F.2d 646, 655 (1st Cir. 1974).

■ Plaintiff's contention that the section 307(b)(1) time limitation on its ability to challenge the constitutionality of the regulation does not comport with the requirements of due process is similarly without merit, *cf. Union Electric Co. v. EPA*, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976). In *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944), the Supreme Court ruled that a sixty day period allowed for protest of wartime price controls established under the Emergency

---

5. Section 307(b)(1) provides:

> (b)(1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c–7 of this title, any standard of performance under section 1857c–6 of this title, any standard under section 1857f–1 of this title (other than a standard required to be prescribed under section 1857f–1(b)(1) of this title), any determination under section 1857f–1(b)(5) of this title, any control or prohibition under section 1857f–6c of this title, or any standard under section 1857f–9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any

implementation plan under section 1857c–5 of this title or section 1857c–6(d) of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day.

6. Plaintiff argues that Regulation V does not provide a definite standard to advise industry of the scope of prohibited conduct, particularly because it contains no definition of the term "uncombined water."

Price Control Act was not unreasonably short. The standard to be applied is whether the period allowed can be said to be reasonable under the circumstances, *id.* at 435, 64 S.Ct. 660. As we have noted, the purpose of the 1970 Amendments was to intensify federal efforts to check what was perceived to be a serious problem of air pollution. The thirty day time limit is fully consistent with the legislative purpose. Moreover, in section 110 of the Act, 42 U.S.C. § 1857c–5, Congress provided for reasonable notice and public hearings prior to the approval of a state implementation plan by the Administrator. The time limit is "not arbitrary but is designed to get issues resolved promptly and thereby prevent delay in cleaning the air." *Granite City Steel Co. v. EPA,* 501 F.2d 925, 926 (7th Cir. 1974).

Having failed to seek review of Regulation V of the state implementation plan within thirty days of the date of promulgation, plaintiff is now barred from doing so.

## IV

■ Finally, plaintiff argues that it was entitled to pre-enforcement review of its claim that the EPA failed to comply with certain duties mandated by statute. It is plaintiff's contention that the Administrator did not take into account its good faith and attempts to comply with the applicable requirements, in violation of section 113(a)(4) of the Act, 42 U.S.C. § 1857c–8(a)(4). We need not decide whether pre-enforcement review is available in this instance since the Administrator's order specifically stated that the "seriousness of [the] violation and any good faith efforts to comply" had been considered. Plaintiff is apparently challenging not a failure to consider this factor, but rather a failure to accord it controlling importance. This is plainly a matter of discretion.

The judgment is affirmed.