SOUTHERN PINES ASSOCIATES, a Virginia Limited Partnership, by its General Partners, Mr. Morton GOLDMEIER and Mr. Vincent J. Mastracco, Jr.; Vico Construction, Inc., Plaintiffs–Appellants,

v.

UNITED STATES of America; William K. Reilly, Administrator, United States Environmental Protection Agency (A–100); Stanley L. Laskowski, Acting Administrator, United States Environmental Protection Agency, Region III; Greene A. Jones, Director, Environmental Services Division, United States Environmental Protection Agency, Region III; John O. Marsh, Jr., Secretary, Department of the Army; Henry J. Hatch, Lieutenant General, Chief, Army Corps of Engineers; James W. Van Loben Sels, Major General, North Atlantic Division Engineer; J.J. Thomas, Colonel, Norfolk District Engineer, U.S. Army Corps of Engineers, Defendants–Appellees.

No. 89–1790.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1990.

Decided Aug. 30, 1990.

Richard Russell Nageotte, argued (James Scott Krein, on brief), Nageotte, McCormack, Krein & Gray, Woodbridge, Va., for plaintiffs-appellants.

Ellen J. Durkee, argued, Land & Natural Resources Div., U.S. Dept. of Justice,

Washington, D.C. (Richard B. Stewart, Asst. Atty. General, Thomas H. Pacheco, Craig D. Galli, David C. Shilton, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., Susan L. Watt, Asst. U.S. Atty., Norfolk, Va., Ellen C. Teplitzky, Asst. Regional Counsel, E.P.A., Philadelphia, Pa., on brief), for defendants-appellees.

Before ERVIN, Chief Judge,
RUSSELL, Circuit Judge, and
BULLOCK, District Judge for the Middle District of North Carolina, sitting by designation.

ERVIN, Chief Judge:

Southern Pines Associates ("Southern Pines") and VICO Construction Inc. ("VICO") appeal a district court order dismissing their complaint and petition for a temporary restraining order for lack of jurisdiction. For the reasons stated below, we affirm the district court order.

### I.

Southern Pines is a Virginia limited partnership which owns 293.41 acres of land located in Chesapeake, Virginia. VICO has a contract with Southern Pines and has been involved in clearing and building upon 40 acres of the property.

On May 23, 1989, the Environmental Protection Agency ("EPA") issued a "Findings of Violation and Order for Compliance" to Southern Pines, informing the company that it had violated section 301(a) of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. §§ 1251 et seq., by discharging fill material into wetlands without a permit. The order instructed Southern Pines to (1) "cease and desist all filling activities in the wetlands" at the site; (2) "[c]ontact EPA within 5 working days" to discuss restoration of the areas; (3) implement a plan for restoration after EPA approval; and (4) submit written notice of intent to comply with the order. In a cover letter accompanying the order, EPA asked Southern Pines

to provide information about the site for it to review in order to make a "final determination of the boundaries of the wetlands that fall under the jurisdiction of the Clean Water Act."

Upon receiving EPA's order, Southern Pines and VICO discontinued all work except logging which does not require a permit. Southern Pines contacted EPA and scheduled a meeting in an effort to resolve the matter. However, the company later canceled the meeting and denied EPA access to the site.

On July 19, 1989, Southern Pines and VICO filed a complaint and a petition for a temporary restraining order predicating jurisdiction on the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and federal question jurisdiction pursuant to 28 U.S.C. § 1331. They alleged that EPA's assertion of jurisdiction over the property created an actual controversy within the meaning of the Declaratory Judgment Act and argued that EPA lacks jurisdiction over the site because the wetlands on the property are not adjacent to any body of water.[1] The district court dismissed the case for lack of subject matter jurisdiction.

### II.

Southern Pines and VICO are asking this court (as they did the district court) to make a threshold determination of whether EPA has jurisdiction over the property. They argue that jurisdiction is proper under *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), a case in which drug manufacturers challenged regulations promulgated by the Commissioner of Food and Drugs.

The Supreme Court held that judicial review was proper in *Abbott* because the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 et seq., did not preclude review, and because the controversy was ripe for judicial resolution. However, the first

---

1. The Act does not require Southern Pines to obtain a permit unless it is discharging fill materials into navigable waters. Navigable waters are "waters of the United States including the

territorial seas." Waters of the United States include "wetlands adjacent to waters (other than waters that are themselves wetlands)...." 40 C.F.R. § 230.3(s)(7) (1988).

question addressed by the Supreme Court in *Abbott* was whether "Congress by the Federal Food, Drug, and Cosmetic Act intended to forbid pre-enforcement review" of the regulation at issue in that case. The Court found that the statutory scheme did not preclude the action. The case before us today is distinguishable from *Abbott* because the statutory structure and history of the CWA provides clear and convincing evidence that Congress intended to exclude this type of action. We agree with the Seventh Circuit which recently held in *Hoffman Group, Inc. v. EPA*, 902 F.2d 567 (7th Cir.1990), that Congress "has impliedly precluded judicial review of a compliance order except in an enforcement proceeding."

 In determining whether a statute precludes judicial review, we look not only to its language, but also to "the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block v. Community Nutrition Institute*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984) (citations omitted); *see also United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). The language, structure, objectives, and history of the CWA, persuade us that Congress intended to preclude judicial review.

The objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To achieve this goal, the Act prohibits any discharge of dredge or fill materials into waters of the United States unless authorized by a permit issued by the Corps of Engineers pursuant to section 404 of the Act. 33 U.S.C. § 1311(a); 33 U.S.C. § 1344(f)(2). Congress provided

EPA with a choice of procedures for enforcing the Act. Section 309(a)(3) of the Act provides that when, on the basis of available information, the Administrator of EPA identifies a person in violation of the Act, the Administrator shall "either issue an order requiring such person to comply with [the Act], or he shall bring a civil action in accordance with subsection (b) of this section." 33 U.S.C. § 1319(a)(3).[2] In 1987, Congress added section 309(g) to the Act which provides that EPA may also assess administrative penalties against those who violate the Act or a permit issued under the Act. 33 U.S.C. § 1319(g). When EPA proceeds under section 309(g), the violator is entitled to a hearing before the agency, and the public is provided with an opportunity to comment. 33 U.S.C. § 1319(g)(2). Orders assessing administrative penalties are subject to judicial review. 33 U.S.C. § 1319(g)(8).

In this case, EPA issued a compliance order. A compliance order is a document served on the violator, setting forth the nature of the violation and specifying a time for compliance with the Act. 33 U.S.C. § 1319(a)(5)(A). If a violator fails to abide by that order, EPA may seek to enforce the order by bringing a suit in federal district court under section 309(b) of the Act, 33 U.S.C. § 1319(b). However, EPA need not issue a compliance order before bringing an action. The penalties for violating either the Act or a compliance order are the same. The court may issue an injunction to require compliance, and it may impose civil penalties of up to $25,000 per day for each violation of the Act, a permit, or a compliance order. 33 U.S.C. § 1319(d). The violator is subject to the same injunction and penalties whether or

---

**2.** Title 33 U.S.C. § 1319(a)(3) provides:

Whenever on the basis of any information available to him the Administrator finds that any person is in violation of section 1311, 1312, 1316, 1317, 1318, or 1345 of this title, or is in violation of any permit condition or limitation implementing any of such sections in a permit issued under section 1342 of this title by him or by a State or in a permit issued under section 1344 of this title by a State, he shall issue an order requiring such person to comply with such section or requirement, or he shall bring a civil action in accordance with subsection (b) of this section.

Section 1319(b) states:

The Administrator is authorized to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which he is authorized to issue a compliance order under subsection (a) of this section....

not EPA has issued a compliance order.[3]

The CWA is not the only environmental statute which allows EPA to issue pre-enforcement administrative orders. Both the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601 *et seq.*, also provide for pre-enforcement agency action. The CAA, like the CWA, provides that EPA may issue a compliance order before bringing suit. Based upon the legislative history of the CAA, courts have found that Congress intended to preclude judicial review of compliance orders issued under the CAA. *See Union Electric Co. v. EPA*, 593 F.2d 299, 304 (8th Cir.), *cert. denied*, 444 U.S. 839, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); *Lloyd A. Fry Roofing Co. v. EPA*, 554 F.2d 885 (8th Cir.1977).

CERCLA allows the EPA to order that a site be cleaned up prior to bringing suit. 42 U.S.C. §§ 9604, 9606, 9607. Prior to 1986 courts held that pre-enforcement remedial actions taken by the EPA under CERCLA were not subject to judicial review because litigation would interfere with CERCLA's policy of prompt agency response. *See, e.g., Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315 (2d Cir.1986); *Wheaton Industries v. EPA*, 781 F.2d 354, 356–57 (3d Cir.1986); *United States v. Outboard Marine Corp.*, 789 F.2d 497, 505–06 (7th Cir.), *cert. denied*, 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *Barnes v. United States District Court*, 800 F.2d 822 (9th Cir.1986); *J.V. Peters & Co. v. EPA*,

767 F.2d 263, 264–65 (6th Cir.1985). In 1986 Congress added a provision to CERCLA which specifically precludes federal jurisdiction over pre-enforcement remedial action. 42 U.S.C. § 9613(h).

The structure of these environmental statutes indicates that Congress intended to allow EPA to act to address environmental problems quickly and without becoming immediately entangled in litigation. The CWA is not only similar in structure to the CAA and CERCLA, but its enforcement provisions were modeled after the enforcement provisions of the CAA. *See* S.Rep. No. 92–414, 92d Cong., 1st Sess. 63 (1971), *reprinted in*, 1972 U.S.Code Cong. & Admin.News pp. 3668, 3730. Considering this legislative history, the structure of these statutes, the objectives of the CWA, and the nature of the administrative action involved, we are persuaded that Congress meant to preclude judicial review of compliance orders under the CWA just as it meant to preclude pre-enforcement review under the CAA and CERCLA.[4]

### III.

Southern Pines and VICO argue that this case does not involve pre-enforcement review because the compliance order is an "enforcement procedure." They also claim that this case should be distinguished from *Hoffman* because they are not merely contesting the extent of EPA's jurisdiction but are claiming that EPA totally lacks jurisdiction.

Southern Pines' action seeks pre-enforcement review because EPA has not yet

---

**3.** Because the compliance order does not alter Southern Pines' and VICO's obligations under the Act, and EPA can bring a suit whether or not it issues an order, Southern Pines and VICO are not faced with any greater threat from EPA just because EPA seeks to negotiate a solution rather than to institute civil proceedings immediately.

**4.** We are not persuaded by Southern Pines' argument that the savings clause in the citizen suit provision of the CWA, 33 U.S.C. § 1365(e), is evidence that Congress did not intend to preclude review. In *Abbott*, the Court relied, in part, upon a savings clause in the Federal Food, Drug and Cosmetic Act to find that Congress did not intend to preclude judicial review of the particular regulations at issue. However, the

government is not arguing here, as it did in *Abbott*, that the absence of specific authority in a provision authorizing judicial review in some circumstances is evidence that Congress intended to preclude review in others. And we find no evidence of Congressional intent to preserve review in this type of case in the savings clause of section 1365(e). In *Abbott*, the savings clause accompanied a section authorizing review of agency regulations, and the plaintiffs in that case were seeking review of a regulation. The savings clause in this case is connected with a provision which provides citizens with the authority to sue to enforce the CWA in cases in which the agency has failed to act. It does not concern challenges by violators to EPA's attempt to enforce the Act.

sought penalties for any violation of the Act or its order. The cases discussing pre-enforcement review under the CAA and CERCLA concern action taken prior to the initiation of judicial proceedings. *See, e.g., Lloyd A. Fry Roofing Co.,* 554 F.2d 885.

We are also unpersuaded by Southern Pines' and VICO's attempt to distinguish this case from *Hoffman.* Allowing the parties to challenge the existence of EPA's jurisdiction would delay the agency's response in the same manner as litigation contesting the extent of EPA's jurisdiction. Southern Pines and VICO can contest the existence of EPA's jurisdiction if and when EPA seeks to enforce the penalties provided by the Act.[5]

## IV.

Southern Pines and VICO argue that they have been denied due process, that under the fifth amendment, they are entitled to notice and an opportunity to be heard prior to the issuance of a compliance order. Contrary to their claim, appellants' fifth amendment rights are not violated because they are not subject to an injunction or penalties until EPA pursues an enforcement proceeding. Southern Pines and VICO will have an opportunity to make their constitutional arguments at any enforcement proceeding before they are subjected to any injunction or penalty. *See Hoffman Group, Inc. v. EPA,* 902 F.2d 567 (7th Cir.1990).

## V.

Because we find that Congress intended to preclude, prior to enforcement action or imposition of penalties, judicial review of compliance orders issued under the Clean Water Act, we affirm the district court order dismissing this action.

AFFIRMED.

---

**5.** Southern Pines and VICO also cite *Swanson v. United States,* 600 F.Supp. 802 (D.Idaho 1985), *aff'd,* 789 F.2d 1368 (9th Cir.1986), and *Leslie Salt Co. v. United States,* 660 F.Supp. 183 (N.D. Cal.1987), for support. We do not find these cases persuasive. Neither case discusses whether the history and nature of the enforcement provisions of section 404 of the CWA demonstrate that Congress intended to preclude pre-enforcement review of compliance orders.