**ST. ANDREWS PARK, INC. and United Management Services the parent of Horizon Community Church, Inc., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF THE ARMY CORPS OF ENGINEERS, Defendant.**

No. 02–14256–CIV.

United States District Court, S.D. Florida.

Jan. 27, 2004.

D. Kent Safriet, Frank E. Matthews, Hopping Green & Sams, P.A., Tallahassee, FL, for Plaintiffs St. Andrews Park, Inc. and United Management Services.

Martha Mann, Thomas L. Sansonetti, U.S. Department of Justice, Washington, DC, Steven R. Petri, Marilynn K. Lindsey, United States Attorney's Office, Fort Lauderdale, FL, Lloyd D. Pike, Office of General Counsel, United States Department of Army Corps of Engineers, Jacksonville, FL, for Defendant United States Department of the Army Corps of Engineers.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT III

COHN, District Judge.

**THIS CAUSE** came before the Court on Defendant's Motion to Dismiss Count III [DE # 27]. The Court has carefully considered the motion and pleadings, including oral argument on the matter, and is otherwise fully advised in the premises.

### I. BACKGROUND

The Plaintiffs St. Andrews Park, Inc. and United Management Services, the parent of Horizon Community Church, Inc., are the owners of a parcel of property known as the St. Andrews Park Site which consists of approximately 149 acres located in the City of Port St. Lucie, Florida. (Second Amended Complaint ¶¶ 6 & 11). In 1980, a prior owner of the St. Andrews Park Site sought regulatory approvals for the development of the Site. (Second Amended Complaint ¶ 12). The CORPS responded in a letter dated November 12, 1980 that portions of the Site sought to be developed were not subject to the CORPS' jurisdiction. (Second Amended Complaint ¶ 13 & Ex. 1). Subsequently, on February 10, 1995, the CORPS completed a jurisdictional determination in which it asserted jurisdiction over the wetlands on the St.

Andrews Park Site. (Second Amended Complaint ¶ 14 & Ex. 2). On February 9, 2000, St. Andrews Park, Inc. submitted a joint application to the United States Department of the Army Corps of Engineers ("CORPS") and the Florida Department of Environmental Protection for the residential development of St. Andrews Park, with a dredge and fill plan having been developed in reliance on the CORPS' jurisdictional determination then in effect. (Second Amended Complaint ¶ 16).

On January 9, 2001, the United States Supreme Court issued its opinion in *Solid Waste Agency of Northern Cook County v. U.S. Corps of Engineers*, 531 U.S. 159, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) ("*SWANCC*"), holding that the CORPS' rule extending the definition of "navigable waters" under the Clean Water Act, 33 U.S.C. § 1344, ("CWA") to include intrastate waters used as habitat by migratory birds exceeded the CORPS' authority.

On November 7, 2001 and December 11, 2002, St. Andrews Park, Inc. provided the CORPS with reports demonstrating hydrological isolation for portions of the St. Andrews Park Site. (Second Amended Complaint ¶ 18). In March 2002, Plaintiffs requested that the CORPS issue a jurisdictional determination either finding wetlands on the Site to be isolated, or, in the alternative, confirming the CORPS' prior assertion of jurisdiction over the property to allow Plaintiffs to exercise their right to appeal. (Second Amended Complaint ¶ 19).

In response, in a June 18, 2002, letter, the CORPS advised Plaintiffs that:

> By letters dated April 26 and May 29, 2001, (copies enclosed) the U.S. Army Corps of Engineers issued a preliminary jurisdictional determination (JD) for the St. Andrews Park site. This determination which was based on the previous JD from 1995, indicated some of the onsite

wetlands were jurisdictional "adjacent" wetlands and that a field visit would be needed to issue a final jurisdictional determination.

At the request of Paradise St. Andrews, Limited, the Corps conducted field visits on November 13, 2001, and February 5, 2002, to the proposed Publix project site in order to finalize a JD for that portion of the St. Andrews Park site. During the site visits, the Corps looked at the berm alongside the C–106 Canal and determined that the wetlands within the Horizon Community Church site are jurisdictional "adjacent" wetlands. The Corps, however, has not conducted a field visit to verify the approximate upland/wetland boundary for purposes of determining the jurisdictional line according to the 1987 Wetland Delineation Manual. In addition a field visit is necessary to verify the upland/wetland boundary for the remaining portions of the St. Andrews Park site.

(Second Amended Complaint, Ex. 3). On August 15, 2002, Plaintiffs filed an administrative appeal challenging the determination made by the CORPS in its June 18, 2002 letter. (Second Amended Complaint ¶ 23 & Ex. 4). On September 27, 2002, the CORPS notified the Plaintiffs that the appeal was accepted. (Second Amended Complaint ¶ 23 & Ex. 4). However, on December 19, 2002, the CORPS rejected the administrative appeal by letter advising Plaintiffs that the CORPS had not completed a final appealable jurisdictional determination:

We understand that your primary concern is the [CORPS'] determination of adjacency, and that you believe the wetlands on the property are isolated and not subject to [CORPS] jurisdiction. However, unless and until Jacksonville District personnel establish the boundaries of the wetlands in question in a field visit, there is no final appealable jurisdictional determination.

(Second Amended Complaint, Ex. 4).

On June 16, 2003, Plaintiffs filed their Second Amended Complaint adding Count III to their original Freedom of Information Act action filed against the CORPS with this Court on September 16, 2002.[1] Count III of Plaintiffs' Second Amended Complaint seeks declaratory and injunctive relief regarding whether the alleged wetlands are within the statutory jurisdiction of the CORPS pursuant to the CWA and interpreted by the Supreme Court's 2001 decision in *SWANCC*. Plaintiffs claim that any wetlands located on St. Andrews Park are not within the jurisdiction of the CORPS because they are not "waters of the United States" or "adjacent" to "waters of the United States." (Second Amended Complaint ¶¶ 55 & 56). Plaintiffs seek a declaratory judgment that the wetlands on their property are not within the jurisdiction of the CORPS and that the CORPS's actions attempting to regulate these wetlands are improper. They further seek an injunction prohibiting the CORPS from asserting jurisdiction over the St. Andrews Park Site and from interfering with Plaintiffs' development and use of the Site.

The CORPS argues that Plaintiffs have not withdrawn their Department of Army permit application for the St. Andrews Park project and the CORPS has not been able to render a final decision regarding the application, primarily because Plain-

---

1. That Freedom of Information Act action relates to the CORPS' alleged failure to turn over documents requested by Plaintiffs concerning the St. Andrews Park Site and is the subject of this Court's November 12, 2003 Order (1) Granting Plaintiffs' Motion for Summary Judgment and (2) Denying Defendant's Motion for Summary Judgment on Counts I and II [DE # 49].

tiffs have not allowed the CORPS on their property to perform a jurisdictional delineation to determine whether the planned development would destroy or adversely affect congressionally protected wetland and water resources. (CORPS' Motion to Dismiss [DE # 27] at 6). Similarly, the CORPS argues, because the CORPS has not been allowed on the property the United States has no knowledge whether unlawful activities that violate the CWA have occurred on the property and therefore has not initiated any action to enforce the CWA in relation to activities occurring on the property. (DE # 27 at 6).

## II. *DISCUSSION*

■■■■ The CORPS' Motion to Dismiss raises a 12(b)(1) facial attack on Plaintiffs' jurisdictional allegations.[2] Specifically, in their Second Amended Complaint, Plaintiffs allege that this Court has federal question jurisdiction over Count III pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act. (Second Amended Complaint ¶ 1). In their Response to Defendant's Motion to Dismiss, Plaintiffs further assert that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

(Plaintiffs' Response to Defendant's Motion to Dismiss [DE # 31] at 5). But neither of these two federal statutes cited by Plaintiffs independently grant jurisdiction. *See Banks v. Page,* 768 F.Supp. 809, 811 (S.D.Fla.1991) ("It is well settled that neither the Declaratory Judgment Act nor the Federal Question statute independently confers jurisdiction") (citing *Borden v. Katzman,* 881 F.2d 1035 (11th Cir.1989) (Declaratory Judgment Act) and *Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173 (5th Cir.1984) (Federal Question statute))[3]; *see also Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) (the Declaratory Judgment Act merely creates a remedy and is not an independent basis for jurisdiction). Thus, jurisdiction must exist either by virtue of the CWA or the Administrative Procedures Act, 5 U.S.C. §§ 701–706, ("APA").[4] *See Banks,* 768 F.Supp. at 811.

The Clean Water Act ("CWA") is a comprehensive statute designed to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a); *see also* 33 U.S.C. § 1344(a). Where the CORPS finds a violation of the CWA, the CORPS may issue

---

**2.** "Attacks on subject matter jurisdiction come in two forms: (1) facial attacks, and (2) factual attacks. Facial attacks on a complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Scarfo v. Ginsberg,* 175 F.3d 957, 960–61 (11th Cir. 1999) (internal quotations and citations omitted).

**3.** With respect to the precedential value of *Banks,* West reports this decision as having been "Vacated, Appeal Dismissed" at 963 F.2d 385 (11th Cir.1992) (table). The Court notes that "the Court of Appeals ... dismissed Banks' appeal, because the United States' filing of its own enforcement action against him rendered the appeal moot. *See Banks v. Page,* 963 F.2d 385, 1992 WL 104088

(11th Cir.1992) (per curiam). Thus, the Court of Appeals' disposition of the appeal in no way besmirched the precedential value of the District Court's analysis." *Inn of Daphne v. U.S.,* No. Civ. A 97–0796–BH–S, 1998 WL 34024732, at *6 n. 6 (S.D.Ala. Aug. 26, 1998).

**4.** Although Plaintiffs' Second Amended Complaint fails to cite to the APA as a basis for jurisdiction and Plaintiffs insist that "the instant case is not brought under the APA," Plaintiffs rely on the APA to provide a waiver of sovereign immunity in this case, arguing that Congress has waived sovereign immunity for all actions against the United States seeking injunctive relief in 5 U.S.C. § 702. (DE # 31 at 6–9) (citing *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) and *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1555 (11th Cir. 1985)).

"cease-and-desist" orders. *See* 33 C.F.R. § 326.3(c). The CORPS may also impose administrative penalties against those who violate the CWA or a permit issued under the CWA. *See* 33 U.S.C. § 1319(g).[5] If the recipient of a CWA order fails to comply, the United States may bring a civil action in federal District Court under the CWA, seeking injunctive relief and monetary penalties. *See* U.S.C. § 1319(b); 33 C.F.R. § 326.5; *see also Banks,* 768 F.Supp. at 811; *Inn of Daphne v. U.S.,* No. Civ. A 97-0796–BH–S, 1998 WL 34024732, at *3–4 (S.D.Ala. Aug. 26, 1998).

Here, where there has been no failure to comply with any CORPS order (no order having been issued), the CWA does not appear to provide an independent basis for this Court's jurisdiction. The CORPS has not performed a *final* jurisdictional delineation of the waters of the United States on the property (*see infra* for further discussion of final agency action), and the CORPS has made no decision as to whether to issue, deny, or deactivate the Plaintiffs' pending application for a permit.

To this extent, this case is distinguishable from *Tennessee Valley Authority v. Whitman,* 336 F.3d 1236 (11th Cir.2003) (*"TVA"*). *TVA* "dealt with an Administrative Compliance Order ["ACO"], which, under the scheme as adopted by the Environmental Protection Agency ("EPA")" in relation to the Clean Air Act, "would have affected the legal rights of the parties. That was so because a violation of the ACO would itself constitute a crime and have other consequences separate and apart from the issue of whether the action at issue was a violation of the underlying statute." Transcript of Hearing adopted in Order for Dismissal, *Vacation Homes of Northwest Florida, Inc. v. The Jacksonville District of The United States Army Corps of Engineers,* Case No. 5:03cv31–RH (N.D.Fla. Oct. 20, 2003) [DE # 48] (henceforth *"Vacation Homes of Northwest Florida* Transcript") at 29–30 (finding inapposite the constitutional analysis applied in *TVA* because "there has been no claim that a jurisdiction determination itself had the kinds of consequences that an ACO was to have according to the EPA. That does make a JD analogous to a stripped-down ACO; that is, an ACO stripped of its unconstitutional effects."). In *TVA,* the Eleventh Circuit noted that the CWA "uses many provisions that are identical to those found in the Clean Air Act. One provision of the CWA states that the Administrator can issue compliance orders 'on the basis of any information available to him.' 33 U.S.C. § 1319(a)(1). Indeed, the entire subsection is entitled 'compliance orders.' Subsection (d) of the CWA provides that 'any person who violates any order issued by the Administrator under subsection (a) ... shall be subject to a civil penalty not to exceed $25,000 per day for each violation.'" *TVA,* 336 F.3d at 1256 n. 32. However, here, where no enforcement order has been issued, this Court does not reach whether the CORPS' ability to issue compliance orders pursuant to 33 U.S.C. § 1319 is unconstitutional by extension of the Eleventh Circuit's holding in *TVA* with respect to 42 U.S.C. § 7413.[6]

Rather, the Court is persuaded by the District Court's decision in *Banks* sup-

---

5. Alternatively, the CORPS may choose to pursue informal resolution means such as negotiating with an alleged violator.

6. Nor is the Court persuaded by Plaintiffs' reliance on *Buccaneer Point Estates, Inc. v. United States,* 729 F.2d 1297 (11th Cir.1984) and *United States v. Key West Towers, Inc.,*

720 F.Supp. 963 (S.D.Fla.1989). Those cases are inapposite for the reasons set forth in the District Court's decision in *Banks. See Banks,* 768 F.Supp. at 811 (analyzing these decisions and holding that "the CWA precludes review of a Corps Cease and Desist Order prior to commencement of a civil enforcement action").

porting that enforcement review of CORPS action under the CWA is precluded by Congress. In *Banks,* a landowner filed a declaratory judgment action against the CORPS, asking the District Court to review the CORPS' issuance of cease and desist orders under the CWA before the CORPS took any further enforcement action. "The court first noted that two courts of appeal had held that the Clean Water Act precluded such review, and followed those cases." *Inn of Daphne,* 1998 WL 34024732, at *6 (citing *Banks,* 768 F.Supp. at 813–14 and specifically referring to *Southern Pines Associates v. United States,* 912 F.2d 713 (4th Cir.1990) and *Hoffman Group, Inc., v. Environmental Protection Agency,* 902 F.2d 567 (7th Cir. 1990) (both holding that enforcement review of CORPS action under the CWA is precluded by Congress)). The *Banks* Court further held that the CORPS' cease and desist order was not "final agency action" under Section 704 of the APA. *See Banks,* 768 F.Supp. at 813–14; *Inn of Daphne,* 1998 WL 34024732, at *6.

 The APA "waives the government's sovereign immunity, 5 U.S.C. § 702, and provides subject matter jurisdiction in conjunction with 28 U.S.C. § 1331 over 'final agency action.' 5 U.S.C. § 704." *Media General Operations, Inc. v. Herman,* 152 F.Supp.2d 1368, 1371–72 (S.D.Ga.2001) (citing *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 152 (5th Cir.1998) (the APA does not create an independent grant of jurisdiction to bring suit but Section 702 of the APA can create a cause of action for which jurisdiction exists under the general federal question statute, 28 U.S.C. § 1331)).[7] In accordance with 5 U.S.C. § 704, federal jurisdiction is lacking when the administrative

action in question is not "final." *See, e.g., National Parks Conservation Association v. Norton,* 324 F.3d 1229, 1236 (11th Cir. 2003). In *Bennett v. Spear,* 520 U.S. 154, 177–178, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), the Supreme Court found that two conditions must be satisfied for agency action to be final: (1) "the action must mark the 'consummation' of the agency's decisionmaking process"; and (2) "the action must be one by which 'rights or obligation have been determined' or from which 'legal consequences will flow.'" *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154; *see also TVA,* 336 F.3d at 1248 ("The Supreme Court has established five factors for determining finality: (1) whether the agency action constitutes the agency's definitive position; (2) whether the action has the status of law or affects the legal rights and obligations of the parties; (3) whether the action will have an immediate impact on the daily operations of the regulated party; (4) whether pure questions of law are involved; and (5) whether pre-enforcement review will be efficient") (citing *FTC v. Standard Oil of Calif.,* 449 U.S. 232, 239–43, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)).

The CORPS' actions do not amount to final agency action under the requirements of *Bennett v. Spear.* Although the CORPS has conducted site visits to the Plaintiffs' property and has "determined that the wetlands within the Horizon Community Church site are jurisdictional 'adjacent' wetlands" (Second Amended Complaint, Ex. 3), the CORPS' June 18, 2002 and December 19, 2002 letters to Plaintiffs (Second Amended Complaint, Exs. 3 & 4) do not mark the "consummation of the agency's decisionmaking process" and do not finally determine the "rights or obli-

---

7. The waiver of sovereign immunity found at Section 702 of the APA applies "in actions against federal government agencies seeking nonmonetary relief *if the agency conduct is itself subject to review. Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1555 (11th Cir.1985) (emphasis added).

gations" of the parties from which "legal consequences will flow." *Bennett,* 520 U.S. at 177–78, 117 S.Ct. 1154.

Decisions from District Courts within the Eleventh Circuit support this conclusion. *See Inn of Daphne,* 1998 WL 34024732, at *6–7 (holding that the CORPS' cancellation of the plaintiff's application to proceed under a nationwide permit was the result of plaintiff's failure to respond to the CORPS' request for a cultural resource survey of the permit area and did not constitute final agency action); [8] *Banks,* 768 F.Supp. at 814 (holding that "a Cease and Desist Order does not alter rights or obligations; the penalties for violating an Order are the same as those for violating the CWA. Thus, a Cease and Desist Order is not 'final agency action' "); *Avella v. United States Army Corps of Engineers,* 1990 WL 84499

(S.D.Fla. Jan. 22, 1990) (holding that the CORPS' negative response to the plaintiff's request for confirmation of a nationwide permit under the CWA did not constitute final agency action under the APA),[9] *aff'd per curiam,* 916 F.2d 721 (11th Cir.1990) (table). Most recently, the District Court in *Vacation Homes of Northwest Florida* held that the CORPS' jurisdictional determination under the CWA did not "affect the legal rights and obligations of the parties. To the contrary, the legal rights and obligations of the parties were precisely the same the day after the jurisdictional determination was issued as they were the day before." *Vacation Homes of Northwest Florida* Transcript at 29.[10] That same reasoning applies in this case.[11]

Accordingly, this Court finds that it does not have the requisite jurisdiction over

---

**8.** In *Inn of Daphne,* the District Court reasoned that "no action taken by the Corps ... carried any legal consequence. A cease-and-desist order merely informs the property owner of the Corps' belief that jurisdiction exists. Upon receipt of such an order, the owner may agree with the Corps, comply under protest, violate the order, or seek a permit before proceeding. Plaintiffs here did none of these things, but instead filed this lawsuit." *Inn of Daphne,* 1998 WL 34024732, at *6–7 (citing, inter alia, *Lotz Realty Co. v. United States,* 757 F.Supp. 692, 695–97 (E.D.Va.1990)).

**9.** In *Avella,* the District Court reasoned that: "After receiving the Corps' response, the potential permittee is no worse off legally than before; he may still proceed with the proposed activity if he is certain of his position or, as is favored by the Corps' regulations, he may initiate an individual permit application .... If he chooses the former course, judicial review of the nationwide permit issue will be available if and when the United States takes enforcement action. If he chooses the latter course, such review will be available if and when a challenge is brought to the Corps' decision on the individual permit application. *See* 5 U.S.C. § 704. Under no circumstances, however, is judicial review available until the defendant has rendered a formal, legally bind-

ing decision (such as an individual permit decision), which presents the court with a fully-developed administrative record to review." *Avella,* 1990 WL 84499, at *1.

**10.** *See also TVA,* 336 F.3d at 1248 (holding the Clean Air Act "CAA" to be "unconstitutional to the extent that mere noncompliance with the terms of an ACO [under the CAA] can be the sole basis for the imposition of severe civil and criminal penalties" and that therefore, "ACOs [under the CAA] lack finality because they do not meet prong two of the *Bennett* test" and thus the Court lacked jurisdiction to review the validity of ACOs: "The EPA must do what it believes it has been required to do all along—namely, prove the existence of a CAA violation in district court, including the alleged violation that spurred the EPA to issue the ACO in this case").

**11.** Even if the action being challenged in this case were final agency action, it appears that review would still be precluded. "Section 704 provides for judicial review of final agency action, but Section 701 precludes such review under either of two circumstances: (1) the regulatory statute precludes review, or (2) agency action is committed by law to agency discretion. As discussed above, the CWA prohibits review." *Banks,* 768 F.Supp. at 814.

Count III of Plaintiffs' Second Amended Complaint.

### III. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that

(1) Defendant's Motion to Dismiss Count III [DE #27] is hereby **GRANTED WITHOUT PREJUDICE** to Plaintiffs to refile once final agency action has been taken and all administrative remedies exhausted.[12]

(2) Plaintiffs' Motion for Summary Judgment as to Count III [DE #12] is hereby **DENIED AS MOOT.**

(3) Defendant's Motion to Stay Proceedings Regarding Plaintiffs' Motions for Summary Judgment (Count III), Plaintiffs' Second Motion for Summary Judgment (Count I), Pending Resolution of Jurisdictional Issues, Or Alternatively, Motion to Strike Motions for Summary Judgment [DE #29] is hereby **DENIED AS MOOT.**

(4) The parties' Joint Motion to Stay Plaintiffs' Motion for Summary Judgment on Count III Pending Determination of Motion to Dismiss and Deny Defendant's Motion to Stay or Strike Plaintiffs' Second Motion for Summary Judgment on Count I [DE #30] is hereby **DENIED AS MOOT.**

---

**12.** Plaintiffs have not at this stage demonstrated that the CORPS has "engaged in a pattern of inaction that can be said to mark the consummation of the agency's decision-making process or to be one by which rights or obligations have been determined." *National Parks Conservation Association v. Norton*, 324 F.3d 1229, 1238 (11th Cir.2003) (internal quotations and citations omitted). The Court stresses, however, that its decision to dismiss this action at this time "should not be construed as tacit approval of any future inaction on the part of" the CORPS with respect to the St. Andrews Park Site. *Id.* at 1240.